UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>STEPHEN L. JOHNSON<br>Administrator<br>United States Environmental Protection Agency<br><br>　　　　Defendant. | Civ. No. 05-1814 (JGP) |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FIRST AND THIRD CLAIMS FOR RELIEF AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**I. INTRODUCTION**

　　Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Plaintiffs Center for Biological Diversity, Valley Watch, Inc., Preston Forsythe, Tina Johnson, and Jeremy Nichols move for summary judgment as to their first and third claims for relief.[1] As explained below, these are straightforward "missed deadline" claims against a federal agency that has ignored a statutory deadline. The Clean Air Act sets a mandatory deadline for Defendant Stephen L. Johnson, Administrator of the United States Environmental Protection Agency ("EPA") to complete a thorough review of the current science of adverse impacts, which is known in Clean Air Act jargon as a review of the "air quality criteria," for Nitrogen Oxides ("$NO_x$") and Sulfur

---

[1] Plaintiffs' other two claims, their second and fourth, are alternative claims and can be dismissed as moot if the Court grants summary judgment on Plaintiffs' first and third claims.

1

Oxides ("$SO_x$"), to complete a thorough review of the National Ambient Air Quality Standards ("NAAQS") for Nitrogen Dioxide ("$NO_2$") and Sulfur Dioxide ("$SO_2$"), to make such revisions to these air quality criteria documents and NAAQS as may be appropriate, to promulgate such new NAAQS for $NO_x$ and $SO_x$ as may be appropriate, and to publish notice of such actions in the Federal Register. EPA admits it has failed to meet these obligations. Accordingly, Plaintiffs' Motion for Summary Judgment should be granted.

The only real dispute is the amount of time the Court should grant EPA to comply with its statutory mandate to review and revise as necessary the air quality criteria documents and NAAQS and to complete all related obligations. NAAQS are public health and welfare based standards for how much air pollution is acceptable in our outside air. $NO_x$ and $SO_x$ contribute to a variety of serious dangers ranging from Sudden Infant Death Syndrome ("SIDS") to disruption of treasured ecology systems such as the Chesapeake Bay. Despite these serious consequences, and despite the fact that Congress mandates that EPA conduct a review every five years, it has been over a decade since EPA last reviewed the $NO_x$ and $SO_x$ criteria documents and NAAQS. In light of the grave nature of the injury from these pollutants coupled with EPA's history of asking for more time then it actually needs, the Court should not countenance any EPA request for delay but should put EPA on the reasonable schedule Plaintiffs propose below.

## II.  JURISDICTION AND STANDING

The Court has jurisdiction over this action because it arises under the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604(a) ("The district courts shall have jurisdiction, . . . to order the Administrator to perform such act or duty"), and raises a federal question, 28 U.S.C. § 1331.

Plaintiffs have standing to bring this suit.  Plaintiff Center for Biological Diversity (the "Center") has standing to bring this suit on behalf of its members because: (1) its members have standing to sue in their own right; (2) the interests at stake are germane to the Center's organizational purpose; and (3) neither the claim asserted nor the relief requested requires the Center's members to participate directly in the lawsuit.  See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).  The latter two conditions are easily satisfied here.  See Affidavit of Peter Galvin ¶¶ 3-13 (explaining the Center's interest in protecting ecosystems from air pollution as well as the importance of promoting the growth of conservation ethic to the Center's goal of protecting people's ability to enjoy natural ecosystems); Affidavit of Sherry Gillespie ¶¶ 6-13 (discussing how her uncertainty regarding $NO_x$ and $SO_x$ pollution impacts the development of a conservation ethic in her daughter and herself).  Further, with regard to the first condition, the Center's members, like the individual plaintiffs in this case, have established the facts necessary to satisfy the requirements for standing.

The individual plaintiffs in this case have standing and the individual members of the Center themselves would have standing to sue in their own right because each has suffered "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . . ."  See Friends of the Earth v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 180 (2000).  Moreover, these injuries are "fairly traceable to the challenged action of [D]efendant; and . . . it is likely, as opposed to merely speculative, that the [injuries] will be redressed by a favorable decision."  Id. at 180-81.  Members of the Center and the individual plaintiffs live, work, and/or recreate in areas that are adversely impacted by $NO_x$ and/or $SO_x$ pollution.  See Affidavit of Sherry Gillespie ¶¶ 3, 9 (discussing the role of $NO_x$ and $SO_x$ pollution in contributing to the regional haze problem that fouls the air around affiant's home in

Denver, Colorado); Affidavit of Jeremy Nichols ¶¶ 3, 8 (same); Affidavit of Preston Forsythe ¶¶ 3-4 (affiant lives within sight of one of largest $SO_2$ sources in nation); Affidavit of Todd Schulke ¶¶ 4-9 ($NO_x$ emissions impact the Chesapeake Bay, where affiant recreates); Affidavit of Erik Johnson ¶¶ 4, 10 (affiant lives in Boulder, Colorado, which, like Denver, is impacted by haze that results from $NO_x$ and $SO_x$ emissions). Both members of the Center and individual plaintiffs have also explained how they are individually injured by $NO_x$ and/or $SO_x$ pollution. See Affidavit of Erik Johnson ¶¶ 10-14 (explaining how regional haze attributable to $NO_x$ and $SO_x$ emissions cause affiant and his son to alter their outdoor activities); Affidavit of Sherry Gillespie ¶¶ 9-12 ($NO_x$ and $SO_x$ emissions affect affiant's enjoyment of outdoor activities and cause her to worry about pollution's effects on her daughter); Affidavit of Preston Forsythe ¶¶ 3-8 (power plant $SO_x$ emissions affect affiant's enjoyment of recreation in nearby national park); Affidavit of Jeremy Nichols ¶¶ 7-9, 13 ($SO_x$ pollution prevents affiant and young son from engaging in outdoor recreation and EPA's failure to review NAAQS deprives affiant of opportunity to participate in NAAQS review process); Affidavit of Todd Schulke ¶¶ 4-9, 15 ($NO_x$ pollution reduces affiant's enjoyment of recreation on the Chesapeake Bay and EPA's failure to review NAAQS deprives affiant of opportunity to participate in NAAQS review process); Affidavit of Tina Johnson ¶¶ 3-5 ($SO_x$ emissions threaten to undermine affiant's professional and volunteer work to promote sustainable forestry). These injuries are directly traceable to EPA's failure to review and revise the air quality criteria and NAAQS related to $NO_x$ and $SO_x$ pollution. See Affidavit of Erik Johnson ¶¶ 7-9 (explaining his uncertainty regarding the validity of the existing NAAQS for $NO_2$ and $SO_2$); Affidavit of Sherry Gillespie ¶ 6-8 (same); Affidavit of Preston Forsythe ¶¶ 8-10 (same as to $SO_2$); Affidavit of Jeremy Nichols ¶¶ 4-6 (same as to $SO_2$); Affidavit of Tina Johnson ¶¶ 5-7 (same as to $SO_2$); Affidavit of Todd Schulke ¶¶ 9-11 (same as

4

to $NO_2$).  Finally, EPA's completion of the required review will redress these injuries.  See Affidavit of Erik Johnson ¶¶ 15-17; Affidavit of Sherry Gillespie ¶¶ 14-16; Affidavit of Preston Forsythe ¶¶ 11-13; Affidavit of Jeremy Nichols ¶¶ 10-12; Affidavit of Tina Johnson ¶¶ 8-10; Affidavit of Todd Schulke ¶¶ 12-14.

Moreover, it is important to note that a lesser requirement applies to the traceability and redressability prongs of the standing test in cases, such as this case, which challenge the failure of government officials to engage in required procedural actions.  As the Supreme Court has explained, "[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 573 n.7 (1992).  Therefore, the fact that EPA could ultimately elect not to revise the NAAQS for $NO_2$ and $SO_2$ does not undercut the immediacy or redressability of the injuries explained above.  As the D.C. Circuit recently reiterated in National Parks Conservation Association v. Manson, 414 F.3d 1, 5 (D.C. Cir. 2005), "[a] plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered.  All that is necessary is to show that the procedural step was connected to the substantive result."  Id. at 5 (quoting Sugar Cane Growers Coop. v. Veneman, 289 F.3d 89, 94-95 (D.C. Cir. 2002)).  The D.C. Circuit further elaborated on this topic in The Wilderness Society v. Norton, 434 F.3d 584, 593-94 (D.C. Cir. 2006), in which the Court referenced the earlier case of Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), to provide an example of a situation in which a plaintiff seeking to redress a procedural injury would satisfy the requirements for standing:

> In a paradigmatic TRAC case, a petitioner seeks to compel agency action that the petitioner claims is legally required and that directly affects the party before the

5

>court. When the agency then acts pursuant to a TRAC order, the petitioner will either secure the redress sought or have a final order on the merits from the agency that will be subject to judicial review. This case would be covered by TRAC if, hypothetically, [the plaintiff's] claim arose because the agency had failed to comply with a statutory provision under the Wilderness Act requiring [the agency] to make a determination on the merits of a concrete wilderness proposal within a precise time frame and a positive determination would redress the particularized injuries of [the plaintiff's] members.

The Wilderness Society, 434 F.3d at 593-94.  This hypothetical is the exact situation presented by the present case.  Here, Defendant has "failed to comply with a statutory provision" (42 U.S.C. § 7409(d)(1)) requiring EPA to review the available science and "make a determination" on whether or not to revise the NAAQS for $NO_x$ and $SO_x$ "within a precise time frame" (five years).  If EPA makes "a positive determination," that is, if EPA promulgates more stringent NAAQS, this determination will "redress the particularized injuries" discussed above.  For the purpose of standing, the court is to assume that EPA will make a positive determination and lower the NAAQS to provide Plaintiffs with more protection of their interests such as air that does not damage their health or enjoyment of natural areas.  However, even a determination that the existing NAAQS need no revision will redress Plaintiffs' injuries by allowing members of the Center and individual plaintiffs to be more certain that the standards against which the air that they breathe is measured are sufficiently protective of human health and the environment.  Moreover, any argument that a decision to retain the existing NAAQS would not redress these injuries fails, because Plaintiffs will then at least have received a final determination against which they can seek judicial review.  See Federal Election Commission v. Akins, 524 U.S. 11, 25 (1998) (recognizing that the fact an agency has discretion in making substantive decisions related to procedural violations is immaterial to the standing inquiry, as "those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon improper legal grounds.").  Finally, EPA's review of the available science on $NO_x$

6

and $SO_x$ pollution generates useful information for Plaintiffs to use in making decisions about what steps to take to protect themselves from $NO_x$ and/or $SO_x$ pollution as well as scientific information Plaintiffs use in their work. See Affidavit of Erik Johnson ¶ 16; Affidavit of Sherry Gillespie ¶ 15; Affidavit of Preston Forsythe ¶ 12; Affidavit of Jeremy Nichols ¶ 11; Affidavit of Tina Johnson ¶ 9; Affidavit of Todd Schulke ¶ 13.

## III. THE CLEAN AIR ACT

### A.    NAAQS AND THEIR REVISIONS

At the heart of the Clean Air Act are National Ambient Air Quality Standards (NAAQS) for a limited number of pollutants that endanger public health or welfare. 42 U.S.C. § 7409(b). "Welfare" includes wildlife, water, vegetation, animals, soils, and visibility. 42 U.S.C. § 7602(h). As the Supreme Court recently explained:

> Section 109(b)(1) instructs the EPA to set primary ambient air quality standards "the attainment and maintenance of which ... are requisite to protect the public health" with "an adequate margin of safety." 42 U.S.C. § 7409(b)(1). ... The EPA, "based on" the information about health effects contained in the technical "criteria" documents compiled under § 108(a)(2), 42 U.S.C. § 7408(a)(2), is to identify the maximum airborne concentration of a pollutant that the public health can tolerate, decrease the concentration to provide an "adequate" margin of safety, and set the standard at that level.

Whitman v. American Trucking Associations, 531 U.S. 457, 465 (2001) (first ellipsis in original). EPA must set a primary NAAQS for each pollutant at levels sufficient to protect public health and set a separate secondary NAAQS for each pollutant at levels that adequately protect public welfare, which includes vegetation and wildlife. In setting each NAAQS EPA must use "the latest scientific knowledge."

Congress mandated that the EPA review each criteria document and NAAQS every five years and revise them if necessary to ensure that they continue to protect public health and welfare based on the latest science:

> Not later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria published under section 7408 of this title and the national ambient air quality standards promulgated under this section and shall make such revisions in such criteria and standards and promulgate such new standards as may be appropriate in accordance with section 7408 of this title and subsection (b) of this section. The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph.

42 U.S.C. § 7409(d)(1). EPA is also required to involve the public in the criteria document development and NAAQS review process by publishing notice and reviewing comments. 42 U.S.C. § 7607(d).

The NAAQS then become the heart of the Clean Air Act's "cooperative federalism" scheme. State and local air pollution control agencies come up with State Implementation Plans (SIPs), with EPA's guidance and oversight, and implement the SIPs to ensure that in areas with dirty air the pollution levels are reduced to below the NAAQS, and that in areas with clean air the pollution levels are maintained below the NAAQS. However, the efforts under the Clean Air Act to clean up or to maintain our air quality at the level the latest science says is safe cannot commence until EPA reviews and revises the NAAQS.

### B. THESE DEADLINES ARE MANDATORY

Notwithstanding the clear directive of 42 U.S.C. § 7409(d)(1), EPA has a history of failing to review air quality criteria documents and NAAQS within the five-year statutory period. Thus, the courts have had several opportunities to examine the nature of the duties imposed by 42 U.S.C. § 7409(d)(1), and have consistently construed them to be nondiscretionary in nature. See American Lung Association v. Reilly, 962 F.2d 258, 263 (2d Cir. 1992) (failure to review

NAAQS for ozone); Environmental Defense Fund v. Thomas, 870 F.2d 892, 900 (2d Cir. 1989) (failure to review NAAQS for sulfur dioxide), *cert denied sub nom.* Alabama Power Co. v. Environmental Defense Fund, 493 U.S. 991 (1989); American Lung Association v. Browner, 884 F. Supp. 345, 346 (D. Ariz. 1994) (failure to review NAAQS for particulate matter); American Trucking Associations v. United States EPA, 175 F.3d 1027, 1047 (D.C. Cir. 1999) (agreeing with the Second Circuit's interpretation of this provision in American Lung Association v. Reilly), *rehearing granted in part on other grounds, denied in part*, 195 F.3d 4 (D.C. Cir. 1999), *rev'd in part on other grounds, aff'd in part sub nom.* Whitman v. American Trucking Associations, 531 U.S. 457 (2001).

.

## IV.  ARGUMENT

EPA is liable under the Clean Air Act for its failure to complete a thorough review of the air quality criteria for $NO_x$ and $SO_x$ and the NAAQS for $NO_2$ and $SO_2$, to make such revisions to these air quality criteria and NAAQS as may be appropriate, to promulgate such new NAAQS for $NO_x$ and $SO_x$ as may be appropriate, and to publish notice of such actions in the Federal Register.

### A.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides for the entry of summary judgment if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When the moving party has demonstrated that there is no material issue of fact for trial, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but … must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is not treated as "a

disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corporation v. Catrett, 477 U.S. 317 (1986) (quoting Fed. R. Civ. P. 1).

### B. STANDARD OF REVIEW

Because the CAA does not contain an internal standard of review, this Court's review is governed by the Administrative Procedures Act ("APA").  See West Virginia v. EPA, 362 F.3d 861, 867 (D.C. Cir. 2004) (applying APA standard of review in CAA case).  Under the APA, the reviewing court is directed to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside" agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706.

### C. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FIRST AND THIRD CLAIMS FOR RELIEF

Plaintiffs are entitled to summary judgment because Defendant's Answer admits liability on Plaintiffs' Clean Air Act claims.  As discussed above, 42 U.S.C. § 7409(d)(1) establishes a five-year deadline for the completion of reviews of air quality criteria and NAAQS as well as the requirement for public notice and comments for these actions.  Defendant's Answer admits Defendant's failure to adhere to the statutory deadline:

> Defendant admits that EPA has not completed a review of the air quality criteria for $NO_x$ and the primary and secondary NAAQS for $NO_2$ since 1996. … Defendant admits that the air quality criteria for $NO_x$ and the primary and secondary NAAQS for $NO_2$ have not been revised and no new primary and secondary NAAQS for $NO_2$ have been promulgated.

Answer to First Amended Complaint ¶ 32.1.

> Defendant admits that since 1996 EPA has not completed a review of the air quality criteria for $SO_x$ and the primary and secondary NAAQS for $SO_2$. … Defendant admits that the air quality criteria for $SO_x$ and the primary and secondary NAAQS for $SO_2$ have not been revised and no new primary and secondary NAAQS for $SO_2$ have been promulgated.

Id. at ¶ 32.2.  In each case, Defendant also admits to failing to publish the required Federal Register notices.  Id. at ¶¶ 32.1, 32.1.  Defendant is thus in violation of 42 U.S.C. § 7409(d)(1), and Plaintiff is entitled to summary judgment on this violation.

> **D.  THE COURT SHOULD ISSUE AN ORDER REQUIRING DEFENDANT TO COMPLETE THE REQUIRED REVIEW PROCESS AND PUBLISH ANY REVISIONS TO THE AIR QUALITY CRITERIA AND RELATED NAAQS IN THE FEDERAL REGISTER BY APRIL 1, 2009 FOR NO$_X$ AND BY MAY 1, 2009 FOR SO$_X$.**

Plaintiffs request that the Court require EPA to conclude reviews of the air quality criteria and related NAAQS for NO$_x$ by April 1, 2009, and for SO$_x$ by May 1, 2009.  This roughly three-year time frame is consistent with the deadlines imposed by court orders in similar cases.  Despite EPA's likely protestations, Plaintiffs' requested timeline is feasible and necessary to protect the public health and welfare from the serious and widespread risks posed by the inadequate NO$_2$ and SO$_2$ standards currently in use.

More specifically, Plaintiffs request that the Court impose a series of interim deadlines on EPA, to ensure the timely completion of each step in the NAAQS review process and facilitate the conclusion within the three-year deadline.  As the United States District Court for the District of Missouri explained in another recent NAAQS review case, there are essentially three phases to the NAAQS review process.  Missouri Coalition for the Environment v. United States EPA, Case No. 4:04CV00660 ERW (E.D. Mo. Sept. 14, 2005) (Attached as Ex. 1).  During the "scientific assessment phase," EPA prepares drafts of the air quality criteria document for the pollutant under consideration, and provides opportunities for review by the public and the agency's own Clean Air Science Advisory Committee.  Id. at 3-4.  EPA's Office of Air Quality Planning and Standards then drafts a staff paper making recommendations on whether to revise the NAAQS.  Id. at 4.  In the second, or "regulatory development phase," EPA proposes action

11

with respect to revisions of the NAAQS, and after reviewing comments on that proposal, publishes a final decision. Id. The third, or "implementation phase," which runs concurrently with the others, involves EPA's completion of any "collateral statutory requirements necessary for full implementation" of the NAAQS revision decision. Id.

In light of the numerous opportunities to measure progress in the above process and EPA's long history of failing to complete the NAAQS review and revision process in a timely manner, Plaintiffs propose the following schedule of interim deadlines. First, with respect to $NO_x$, Plaintiffs request that the Court order EPA to complete the initial draft of the Criteria Document no later than March 1, 2007 and to finalize the Criteria Document by August 1, 2007. The initial draft of the EPA's Office of Air Quality Planning and Standards' Staff Paper on whether to revise the NAAQS would then be due on December 3, 2007 and the final version of the Staff Paper would follow on April 1, 2008. EPA should sign the notice of proposed rulemaking for all $NO_x$-related NAAQS s no later than October 1, 2008 for publication in the Federal Register within 10 working days, with the notice of final rulemaking concerning any revisions to the NAAQS due on or before April 1, 2009 for publication in the Federal Register within 10 working days. All implementation activities should also be completed by April 1, 2009.

Plaintiffs further propose that the review process for the $SO_x$ air quality criteria and related NAAQS proceed on a schedule that is offset one month from the $NO_x$ review deadlines. Thus, Plaintiffs request that the Court order EPA to complete the initial draft of the $SO_x$ Criteria Document no later than April 1, 2007 and to finalize the Criteria Document by September 3, 2007. The initial draft of the Staff Paper would then be due on January 3, 2008 and the final version would follow on May 1, 2008. EPA should sign the notice of proposed rulemaking for

all $SO_x$-related NAAQS no later than October 31, 2008 for publication in the Federal Register within 10 working days, with the notice of final rulemaking concerning any revisions to the NAAQS due on or before May 1, 2009 for publication in the Federal Register within 10 days. All implementation activities should also be completed by May 1, 2009.

The Court should reject any arguments by EPA that Plaintiffs' proposed deadlines are impossible to meet. The United States District Court for the District of Arizona's analysis, when confronted with a similar assertion from EPA in a suit to compel the agency to review the NAAQS for Particulate Matter (PM), applies equally to the $NO_x$ and $SO_x$ review process in this case:

> In such circumstances, the agency carries a heavy burden to show that compliance with statutory mandated deadlines is impossible or infeasible. Excuses for delay must go beyond the general proposition that further study and analysis of materials will make final agency action better, because further study will always make everything better, and it is always easier to do something with more rather than less time.

American Lung Ass'n v. Browner, 884 F. Supp. at 347 (internal citations omitted); see also Alabama Power Co. v. Costle, 636 F.2d 323, 359 (D.C. Cir. 1979) ("The agency's burden of justification in such a case is especially heavy."). In justifying its decision to order a shorter timeline than that proposed by EPA for the review process, the court pointed out that by allowing the NAAQS review deadline to lapse, "the EPA has not merely missed a deadline, it has nullified the congressional scheme for a fixed interval review and revision process." American Lung Ass'n v. Browner, 884 F. Supp. at 348. Further, it is important to note that although EPA contended that it simply could not perform the review in less than 4 years and 3 months, Id. at 346-347, the agency was nonetheless able to complete this PM NAAQS review process in less than three years. See 62 Fed. Reg. 38,652 (July 18, 1997) (finalizing the revised NAAQS for PM). Moreover, the product of this NAAQS review process survived legal challenges raised by

13

both business and environmental groups in the District of Columbia Circuit, indicating that three years is ample time for EPA to select defensible air quality standards.  See American Trucking Assns. v. EPA, 283 F.3d 355, 358 (D.C. Cir. 2002).

The deadline proposed by Plaintiffs is also consistent with the deadline imposed by the court in Missouri Coalition for the Environment, where the plaintiffs brought suit to compel the EPA to review and update as necessary the air quality criteria and NAAQS for lead.  Although EPA proposed a four and a half year period to complete the NAAQS review process, on September 14, 2005, the court entered an order requiring EPA to finalize the NAAQS review process by September 1, 2008.  Missouri Coalition for the Environment, Case No. 4:04CV00660 ERW at 9.  The reasonableness of the September 1, 2008 deadline is borne out by the fact that EPA has thus far been able to essentially meet the interim deadlines imposed by the Missouri Coalition court's order.  See id. (establishing December 1, 2005 as the deadline for completion of the first draft of the lead air quality criteria document); 70 Fed. Reg. 72,300 (Dec. 2, 2005) (announcing availability of draft lead air quality criteria document for public comment); see also 71 Fed. Reg. 11,561 (Mar. 8, 2006) (explaining EPA's plan for complying with the remainder of the court-imposed deadlines).

While it is true that Plaintiffs' requested schedule contemplates EPA engaging in multiple air quality criteria and NAAQS reviews simultaneously, this fact does not counsel against adopting Plaintiffs' deadlines.  First, it is clear that Congress intended that EPA engage in simultaneous reviews of the air quality criteria and NAAQS for multiple pollutants, as Congress allowed EPA only five years in which to review the adequacy of the air quality criteria and NAAQS for all six criteria pollutants.  See 42 U.S.C. § 7409(d)(1).  The only way EPA can ever comply with 42 U.S.C. § 7409(d)(1) is to conduct multiple reviews simultaneously.  Second, the

fact that EPA is currently operating under court order to conduct reviews of the air quality criteria and NAAQS for ozone, particulate matter, and lead does not somehow grant EPA authorization to further violate the Congressional mandate of 42 U.S.C. § 7409(d)(1) with regard to $NO_x$ and $SO_x$.

Plaintiffs' proposed deadlines will not place an impossible burden on EPA. First, it is worth noting that the ozone, particulate matter, and lead reviews are all at different stages of the review and revision process. See 71 Fed. Reg. 2620 (Jan. 17, 2006) (proposing rule for revised NAAQS for particulate matter); 71 Fed. Reg. 10,030 (Feb. 28, 2006) (announcing the availability of the final criteria document for ozone); 70 Fed. Reg. 72,300 (Dec. 2, 2005) (announcing the release of the first draft criteria document for lead). This range of deadlines staggers the workload, minimizing "bottlenecks" at the agency. Moreover, except at the highest levels of agency management, different EPA personnel carry out the review process for different pollutants. Even at the upper echelons of EPA there is little reason to believe that Plaintiffs' proposed schedule will create problems because these EPA officials have little reason to involve themselves in the most minute details of the air quality criteria and NAAQS review documents. Policy decisions like balancing economic impacts versus more stringent standards are barred from consideration in the NAAQS setting process. See Whitman v. American Trucking Associations, 531 U.S. at 464. The one month period between the $NO_x$ and $SO_x$ deadlines requested by Plaintiffs is important because it staggers the review while still allowing EPA to consider the interaction of these two pollutants which may dictate more protective standards than each pollutant considered individually. In the real world one is not exposed to one pollutant at time. A reasonable standard needs to take this fact into consideration.

15

Moreover, EPA initiates the criteria document and NAAQS review process by publishing in the Federal Register a short, simple "call for information." After this suit was filed, EPA initiated its review of the air quality criteria for $NO_x$ by publishing a call for information. See 70 Fed. Reg. 73,236 (Dec. 9, 2005) (announcing that EPA is undertaking a review of the $NO_x$ air quality criteria). Plaintiffs' proposed schedule would give EPA a little less than a year and three months in between EPA's publication of the call for information for $NO_x$ and the due date of having a draft criteria document ready. Surely, a year and a quarter is an adequate amount of time for EPA to complete one task in a process that Congress ordered to be completed every five years. Unfortunately, EPA has still not published its call for information with regard to $SO_x$. It is hard to attribute this delay to anything other than open defiance of Congress' mandate and this Court's jurisdiction as the call for information is a simple document that would take minimal effort to prepare and publish. See 70 Fed. Reg. 73,236 (Dec. 9, 2005) (less than a two page document). While the Court cannot and should not impose deadlines as a punitive step against EPA, the Court should also not allow EPA to manipulate what would be a reasonable remedy for the admitted violation in this case by failing to take the simple step of beginning the review process for $SO_x$.

Further, the Court should carefully scrutinize any argument EPA may make about lacking the resources to expeditiously complete a thorough review of the $NO_x$ and $SO_x$ air quality criteria and related NAAQS. EPA's failure to adhere to the Clean Air Act's mandatory NAAQS review deadline is not solely the product of a federal agency attempting to juggle multiple statutory requirements under the constraints of a limited budgetary allocation. Rather, EPA's recent regulatory actions reflect the agency's decision to prioritize the fulfillment of policy objectives at the expense of allocating agency resources to comply with Congressional mandates. Too often,

16

EPA's agenda has given precedence to discretionary actions that weaken environmental standards over statutorily compelled actions like the NAAQS review at issue, which are designed to ensure sufficient protection of the environment. For example, the EPA has devoted its resources to drafting regulatory revisions designed to roll back environmental regulations on power plants. See 70 Fed. Reg. 61,081 (Oct. 20, 2005) (proposing revisions to the emissions tests used to determine whether modifications made to existing facilities trigger Clean Air Act prevention of significant deterioration and new source review requirements for that facility). Further, the agency has recently undertaken a number of other regulatory actions not compelled by statutory deadline or court order which are at best questionable from the standpoint of advancing environmental protection. See e.g. New York v. EPA, No. 03-1380, 2006 U.S. App. LEXIS 6598 (D.C. Cir. Mar. 17, 2006) (rejecting another recent EPA attempt to weaken prevention of significant deterioration and new source review rules); 70 Fed. Reg. 43,922 (July 29, 2005) (proposing to exempt emissions sources from previously applicable hazardous pollutant limitations during facility startups, shutdowns, and malfunctions); 70 Fed. Reg. 51,591 (Aug. 31, 2005) (staying the effectiveness of the $NO_x$ State Implementation Plan ("SIP") Call as it pertains to the State of Georgia); 70 Fed. Reg. 54,046 (Sept. 13, 2005) (announcing interim guidance advising states how to weigh photochemical reactivity of Volatile Organic Compounds in crafting SIPs that meet the ozone NAAQS); 70 Fed. Reg. 71,446 (Nov. 29, 2005) (proposing to remove the "nuisance" provisions of Georgia law from the Georgia Clean Air Act State Implementation Plan). The Court should therefore "take with a grain of salt" any allegations by Defendant that expeditious completion of the review process for the $NO_x$ and $SO_x$ air quality criteria and related NAAQS is precluded by agency constraints.

Finally, a sufficiently expeditious schedule is necessary because of the severe and widespread harm that these pollutants inflict. Scientific evidence has linked $NO_2$ and $SO_2$ to a wide variety of adverse effects. First Amended Complaint ("Complaint") ¶ 8; Answer to First Amended Complaint ("Answer") ¶ 8. $NO_x$ emissions are a precursor of ground-level ozone and particulate matter pollution. Complaint ¶ 20; Answer ¶ 20. $NO_x$ emissions also play a role in the accumulation of excess nitrates in drinking water, the eutrophication of aquatic ecosystems and nitrification of soils, global climate change, increases in toxic pollutant levels, and the depletion of the ozone layer. Complaint ¶ 20; Answer ¶ 20. $NO_x$ are also responsible for the destruction of critical habitat for endangered and threatened species, such as the Bay Checkerspot Butterfly. See 66 Fed. Reg. 21,450 (Apr. 30, 2001) ("Recent research has identified excess nitrogen deposition from polluted air as a threat to bay checkerspot habitats, due to its fertilizing effect enhancing the growth of invasive nonnative plants even in serpentine soil areas."). Similarly, EPA's own literature on the subject explains that $SO_x$ pollution negatively impacts respiratory performance, especially among children and the elderly, and aggravates existing heart and lung diseases, such as asthma. EPA, Office of Air Quality Planning and Standards, "$SO_2$ – How Sulfur Dioxide Affects the Way We Live & Breathe" (Nov. 2000), available at http://www.epa.gov/air/urbanair/so2/index.html. Furthermore, $SO_x$ emissions also contribute to the formation of acid rain, which damages trees, crops, soils, water bodies, and historic buildings and monuments, and to visibility impairment problems, such as those which plague many national parks. Id. Contamination of drinking water, destruction of fishing grounds, global warming, acid rain, extinction of species, loss of priceless vistas, and adverse effects on human health are not risks the public should have to bear while the EPA dallies away in open defiance of a Congressional mandate.

**V. CONCLUSION:**

Therefore, for the reasons explained above Plaintiffs respectfully request that the Court grant summary judgment as to Plaintiffs' first and third claims for relief, order EPA to complete a thorough review of the air quality criteria and related NAAQS for $NO_x$ and $SO_x$ in accordance with 42 U.S.C. § 7409(d)(1), and further order Defendant to conclude the review of the $NO_x$ air quality criteria and related NAAQS by April 1, 2009 and the $SO_x$ air quality criteria and related NAAQS by May 1, 2009, while in both cases complying with the interim deadlines discussed above.

Respectfully submitted,

\_\_\_/s_____
Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
433 Chestnut Street
Berea, KY 40403
Tel: (859) 986-5402
Fax: (859) 986-1299
E-mail: rukeiley@igc.org

Counsel for Plaintiff

Dated: April 3, 2006