# EXHIBIT ONE

Case 1:05-cv-01814-LFO   Document 20-9   Filed 04/03/2006   Page 1 of 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI COALITION FOR THE ENVIRONMENT, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 4:04CV00660 ERW |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendant's Motion for Summary Judgment [doc. #13], Plaintiffs' Motion for Summary Judgment [doc. # 14], and Intervenor Association of Battery Recyclers, Inc.'s Motion for Summary Judgment [doc. # 40].

**I.    STATUTORY BACKGROUND**

Pursuant to 42 U.S.C. § 7409, the United States' Environmental Protection Agency ("EPA") has the responsibility of promulgating regulations relating to air quality standards. *See* 42 U.S.C. §§ 7409, 7408. The national ambient air quality standards ("NAAQS") are to be "based on such criteria and allowing an adequate margin of safety" to such an extent as is necessary "to protect the public health." 42 U.S.C. § 7409(b)(1). After the NAAQS are developed and published for a particular pollutant, the Administrator of the EPA has the nondiscretionary duty of completing a review of the published criteria "at five-year intervals." 42 U.S.C. § 7409(d)(1). However, "[t]he Administrator may review and revise criteria or

1

promulgate new standards earlier or more frequently" than every five years. 42 U.S.C. § 7409(d)(1).

In 1978, the EPA promulgated NAAQS for lead.[1] *See* 43 Fed. Reg. 46,246,7; *Lead Indus. v. Envtl. Prot. Agency*, 647 F.2d 1130 (D.C. Cir. 1980). Since then, the EPA has not completed a review of the NAAQS for lead. *See* 42 U.S.C. § 7607 (outlining all the requirements for rulemaking). In 1986, the EPA revised the Air Quality Criteria Document ("CD") for lead. The CD was supplemented by the EPA in 1990. Also in 1990, the EPA's Office Air Quality and Planning Standards issued a staff paper, however, the EPA did not publish a revised NAAQS for lead.[2] Plaintiffs filed this lawsuit on May 27, 2004 seeking a declaratory judgment that the Administrator of the EPA is in violation of the requirement that the EPA review, and if necessary, revise the NAAQS for lead every five years. Plaintiffs also request that this Court issue a mandatory injunction ordering Defendant to review, and if appropriate, revise the NAAQS for lead.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue

---

[1]"National primary and secondary ambient air quality standards for lead and its compounds, measured as elemental lead by a reference method based on Appendix G to this part, or by an equivalent method, are: 1.5 micrograms per cubic meter, maximum arithmetic mean averaged over a calendar quarter." 40 C.F.R. § 50.12.

[2]EPA claims that it chose not to revise the criteria based on the most current CD and staff paper relating to lead. Missouri Coalition argues that although the EPA ceased reviewing the lead NAAQS in 1990, it never definitively stated that it considered the review complete and that it was inappropriate to revise the standards, and it is impossible to know the intent of the EPA because it never published a final rulemaking.

2

of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003).

**III.    DISCUSSION**

Defendant agrees that the material facts of the case are not in dispute,[3] and that Plaintiffs are entitled to a declaratory judgment that the Administrator has failed to perform the nondiscretionary act of reviewing the lead NAAQS every five years. The parties are in disagreement about the time it will take for the EPA to review, and if necessary, revise the NAAQS for lead.[4]

The Court recognizes the three phases of reviewing NAAQS as described by the EPA: (1) a scientific assessment phase, (2) a regulatory development phase, and (3) an implementation phase. The EPA provides a detailed analysis of the interim steps it believes are necessary during this three phase process. During the scientific assessment phase, the EPA drafts a CD that reviews and assesses studies and medical, scientific and technical information relevant to the pollutant in question. The EPA suggests that during the review and revision of the CD, there should be opportunities for peer review by experts in the relevant fields at a series of workshops. Then, the peer reviewed drafts should be made available for public review and comment and review by the Clean Air Scientific Advisory Committee ("CASAC"), the EPA's Science Advisory Board. *See* 42 U.S.C. §§ 4365(e), 7409(d)(2), and 7417(a). The EPA intimates that it is

---

[3]Indeed, all the parties agree that there are no material facts in dispute, and each party has filed its own motion for summary judgment.

[4]The Intervenor Association of Battery Recyclers, Inc. ("ABR") supports the EPA's proposed timetable with the exception of wanting a slightly longer public comment period than is proposed by the EPA.

3

necessary to prepare and seek CASAC review of two or more drafts of the CD. In addition to the CD, the EPA's Office of Air Quality Planning and Standards' ("OAQPS") Office of Air and Radiation prepares a document called a "staff paper" ("SP") that presents staff recommendations on whether to revise the NAAQS, based on the technical information compiled and analyzed in the CD. Like the CD, the EPA believes that it is necessary that it prepare and seek CASAC review of two or more drafts of the SP.

Next, during the regulatory development phase, the Administrator must follow the rulemaking procedures as set forth in 42 U.S.C. § 7607. The EPA must publish a notice of its proposed decision including, *inter alia*, a statement of basis and purpose, factual basis of the proposal, and the methodology used in analyzing the data. Furthermore, the proposal must detail CASAC's findings and any departures in the proposal from those findings. After a public comment period, the EPA will draft the final rulemaking decision detailing any departures from the proposed rulemaking.

The third phase, the implementation assessment phase, actually runs concurrently with the prior phases. During this phase, the EPA will complete any collateral statutory requirements necessary for the full implementation of the EPA's final rulemaking. Among various other tasks, the EPA must draft an economic impact analysis reporting how the rulemaking regarding the lead NAAQS affects the country. *See* 42 U.S.C. § 7612.

The schedule proposed by the EPA allows for more than 4 ½ years to complete the review and any necessary revisions, suggesting that the EPA (1) issue a revised criteria document by February 28, 2007, (2) sign by September 26, 2008 a notice of proposed rulemaking concerning any proposed revisions to the lead NAAQS for publication in the Federal Register,

4

and (3) sign by June 26, 2009, a notice of final rulemaking concerning any revisions to the NAAQS for publication in the Federal Register.

Plaintiffs' proposal outlines the suggested deadlines for the interim statutorily-mandated tasks, to be finished with a Notice of Final Rulemaking on May 30, 2006.[5] Plaintiffs' proposed schedule is expedited, and now, with certain procedural hiccups in this case,[6] the dates proposed by the Plaintiffs are not realistic.[7]

However, the EPA has, as in other cases, failed to perform a nondiscretionary duty, and then suggested a timeline that "wholly defeats the mandate by Congress that at 5-year intervals, the Administrator shall complete a thorough review of the. . . national ambient air quality standards promulgated under this section[.]" *Amer. Lung Assoc.*, 884 F. Supp. at 348 (internal quotations omitted). The EPA has not completed even a *partial* review of the lead NAAQS since

---

[5]The EPA argues that the Court lacks jurisdiction to order completion of any interim tasks that are not statutorily required. This Court notes at the outset that this Court has considerable discretion to fashion equitable remedies, and it will be fashioning intermediate deadlines in this case. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) (district courts possess considerable equitable discretion); *Nat'l Resources Defense Council v. Train*, 510 F.2d 692, 705 (D.C. Cir. 1975) (formulating and setting enforcing intermediate deadlines is a proper exercise of district court's discretion); *Amer. Lung Assoc. v. Browner*, 884 F. Supp. 345, 348-49 (D. Ariz. 1994) (court setting interim deadlines for EPA's review of the particulate matter NAAQS).

[6]Plaintiffs filed their Motion for Summary Judgment in October 2004. Briefing for Defendant's Motion for Summary Judgment was completed by December 2004. However, a consolidation of this case with another slowed the progress of this case. Further, the Court found it necessary to rule on a jurisdictional Motion for Judgment on the Pleadings prior to addressing Plaintiffs' and Defendant's Motions for Summary Judgment. This decision was further delayed because the Court found that it was necessary that Intervenor ABR be permitted to filed its own Cross Motion for Summary Judgment.

[7]Indeed, a few of Plaintiffs' proposed deadlines have already passed. The proposed timeframe for the different tasks are as follows: (1) preparation of criteria document by June 30, 2005 (within 14 months); (2) preparation of staff paper by June 30, 2005 (simultaneous); (3) CASAC review of CD and SP by October 30, 2005 (within 4 months); (4) finalize CD and SP by December 30, 2005 (within 2 months); (5) rule proposal package by January 30, 2006 (within 1 month); (6) comment period by March 30, 2006 (within 2 months) and (7) notice of final rulemaking by May 30, 2006 (within 2 months).

5

1991.  This Court finds that the EPA has blatantly disregarded Congress' mandate that the lead NAAQS be reviewed at five year intervals.

The EPA self-servingly opines that nearly five years is necessary for it to review, and if necessary, revise the NAAQS for lead.  Specifically, the EPA argues that the NAAQS review will be particularly complex, and that EPA staff and senior managers have "produce[d] the shortest possible schedule for completing the lead review."  EPA allocates the majority of the time to drafting and revising the CD and SP.  The EPA argues that it will take significant time to collect and analyze the relevant technical information so that, should it decide to revise the NAAQS, the criteria will be legally defensible.  In support of its arguments, the EPA relies on *Natural Res. Def. Council v. Train*, to argue that "an equity court does not embrace enforcement through contempt of a party's duty to comply with an order that calls him 'to do an impossibility.'"  510 F.2d 692, 713 (D.C. Cir. 1974).  This Court notes that this idea is predicated on the condition that the "official involved . . . has in good faith employed the utmost diligence in discharging his statutory responsibilities." *Id*.  In *State v. Gorsuch*, the Court explained that "[i]f the administrator could possibly have complied with the statutory mandate, but did not because of competing concerns or other decisions on his part, then he is not acting in 'good faith.'"  554 F. Supp. 1060, 1065 (D.C.N.Y. 1983).  In this case, unlike *Train*, the deadline for completing the agency's nondiscretionary duty has long since passed, and Defendant has provided no reason whatsoever as to why it did not comply with the requirement to review the NAAQS for lead every 5 years.[8]

---

[8]The Court notes that the EPA's other arguments in support of a longer timetable have routinely been dismissed in other cases as not being persuasive.  *See Cronin v. Browner*, 90 F.Supp.2d 364, 376 (S.D.N.Y. 2000) (noting the importance that the "Court achieves a balance between expediency and quality");  *Sierra Club v. Thomas*, 658 F.Supp. 165, 171 (N.D.Cal.1987) (noting that an agency's claim for need of additional time must be scrutinized "since officials may seize on a remedy made available for extreme illness and promote it into the daily bread of convenience");  *Sierra Club v. Thomas*, 658 F. Supp. 165, 173-74 (N.D. Cal. 1987) (the court

6

However, as the EPA expatiates, the "multi-media, multi-pathway nature of lead exposure in the United States" makes "review of the lead criteria and NAAQS ...particularly complicated." While EPA's failure to comply with congressional mandates may invite retribution, the law is clear that punishment of governmental agencies for past delay by imposing a mandatory accelerated timetable is not necessarily in the public interest. *See United Steel Workers of Am. v. Rubber Mfrs. Ass'n,* 783 F.2d 1117, 1120 (D.C. Cir. 1986). Plaintiffs' urging of the Court for imposition of an expedited timetable, while understandable, in view of the EPA's lack of response to its lawful obligations, in the Court's view, is not in the best interests of the health and welfare of the Citizens of the United States. Setting abbreviated deadlines which can not possibly address the serious health issues required for the implementation of a responsible and serviceable Rule, would serve as an invitation to the EPA to react by filing foreseeable requests for extensions and likely suggest that inadequate effort might be indicated in efforts to meet impossible deadlines.

Because both proposed schedules are fallible, this Court will enter its own revised timetable. In addition to reviewing the parties' proposed schedules for rulemaking under § 7409, the Court has also reviewed other complex rulemakings completed by the EPA as persuasive evidence as to a feasible amount of time to complete the review, and if necessary, the revision of the lead NAAQS. *See Sierra Club v. Thomas*, 658 F. Supp. 165, 172 (N.D. Cal. 1987) ("simply because EPA has developed the habit of taking longer to complete its rule makings does not mean that shorter schedules are infeasible.").

The initial draft of the CD shall be prepared no later than December 1, 2005. The EPA may determine the necessary number of peer review workshops and CASAC reviews needed to

---

dismissed the claims from the EPA that a shortened timetable would divert scarce resources from other projects and the EPA's "litany" that "further study always makes everything better").

7

finalize the CD. However, the CD must be finalized no later than October 1, 2006. The initial draft of the SP shall be prepared no later than January 1, 2007. Again, the EPA may determine the necessary number of CASAC reviews needed prior to finalizing the paper. However, the SP must be finalized no later than November 1, 2007. The notice of proposed rulemaking shall be signed no later than May 1, 2008 for publication in the Federal Register. The public comment period shall be open for 60 days. The notice of final rulemaking concerning any revisions to the NAAQS shall be signed on or before September 1, 2008 for publication in the Federal Register. All tasks necessary for implementation (ie. monitoring methods, surveillance network design, impact analysis, and control strategy development) shall also be completed on or before September 1, 2008.

The EPA, in its briefing, has implicitly suggested that if its proposed schedule is not adopted, it would likely need to seek extensions and modifications of the court-ordered schedule. The Court believes this is a realistic timetable for completing the various tasks associated with a NAAQS review. Thus, the Court will not be inclined to grant extensions, absent a showing of good cause. *See Maine Ass'n of Handicapped Persons of Portland, Me. v. Dole*, 623 F. Supp. 920, 926 (D.C. Me. 1985) (in an action for injunctive relief the Court held that it "is not prepared to sit by and condone the Secretary's unimaginably leisurely pace in performing her functions while the Plaintiffs' class awaits implementation of the will of Congress.").

## IV.     ATTORNEYS FEES

The Court notes that 42 U.S.C. § 7604(d) provides that a court "may award costs of litigation" to a party if appropriate. Reasonable attorney fees are specifically described as litigation costs. This Court finds that Plaintiffs are entitled to reasonable attorney fees in this case.

Plaintiffs' suit to enforce the provisions of the Clean Air Act comes because the EPA has neglected its nondiscretionary duty for more than two decades. Plaintiffs shall submit a Motion for Attorney fees documenting the attorney time spent thus far on this case no later than October 17, 2005. Defendant shall respond with any objections no later than November 7, 2005. Plaintiffs shall file any reply within five (5) days thereafter.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' request for declaratory relief is **GRANTED**. The Court declares that the EPA has failed to perform its nondiscretionary duty of reviewing the NAAQS for lead at five year intervals.

**IT IS FURTHER ORDERED** that Plaintiffs' request for a mandatory injunction is **GRANTED**. Defendant shall complete the initial draft of the Criteria Document no later than **December 1, 2005**. The Criteria Document must be finalized no later than **October 1, 2006**. The initial draft of the Staff Paper shall be prepared no later than **January 1, 2007**. The Staff Paper must be finalized no later than **November 1, 2007**. The notice of proposed rulemaking shall be signed no later than **May 1, 2008** for publication in the Federal Register. The public comment period shall be open for **60 days**. The notice of final rulemaking concerning any revisions to the NAAQS shall be signed on or before **September 1, 2008** for publication in the Federal Register. All tasks necessary for implementation shall also be completed on or before **September 1, 2008**.

**IT IS FURTHER ORDERED** that Plaintiffs shall submit a Motion for Attorney fees documenting the attorney time spent on the case no later than **October 17, 2005**. Defendant shall

9

respond with any objections no later than **November 7, 2005**. Plaintiffs shall file any reply within **five (5) days** thereafter.

    Dated this <u>14th</u> day of September, 2005.

                                              */s/ E. Richard Webber*
                                              E. RICHARD WEBBER
                                              UNITED STATES DISTRICT JUDGE