UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
CENTER FOR BIOLOGICAL DIVERSITY        )
et al.,                                             )
                        Plaintiffs,                )
                                                    )
v.                                                  )          Civ. No. 05-1814 (JGP)
                                                    )
STEPHEN L. JOHNSON                           )
Administrator                                     )
United States Environmental Protection Agency )
                                                    )
                        Defendant.               )
_____)


**PLAINTIFF'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT[1]**


## I.  INTRODUCTION

Defendant Stephen L. Johnson, in his official capacity as Administrator of the United

States Environmental Protection Agency [hereinafter "EPA"] concedes liability in this Clean Air

Act deadline suit regarding EPA's failure to perform its mandatory duty to review the air quality

criteria and National Ambient Air Quality Standards ("NAAQS") for the air pollutants Sulfur

---

[1] Defendant has filed its own Cross-Motion for Summary Judgment as well as its opposition to
Plaintiffs' Motion for Summary Judgment.  However, the Court's January 31, 2006 Order does
not permit Defendant to file a separate Cross-Motion for Summary Judgment.  Therefore,
Defendant's Cross-Motion for Summary Judgment should be stricken.  In any event, Defendant
filed twice its "Memorandum in Support of Cross-Motion for Summary Judgment and In
Opposition to Plaintiffs' Motion for Summary Judgment," once in support of its Cross-Motion
and once in opposition to Plaintiffs' Motion for Summary Judgment.  Therefore, to the extent the
Court considers Defendant's Cross-Motion, Plaintiffs request that the Court consider this brief
Plaintiffs' Memorandum in Opposition to Defendant's Cross Motion.  In no event, however,
should Defendant be allowed to file a reply to this Memorandum which would really be a sur-
reply to Plaintiffs' Motion for Summary Judgment which is certainly not permitted pursuant to
the Court's January 31, 2006 order setting forth the briefing schedule for this case or this Court's
local rules.

Dioxide ($SO_x$) and Nitrogen Oxides ($NO_x$), to make such revisions to the air quality criteria and NAAQS as may be appropriate, and to provide notice and public comment period for these actions.  <u>See</u> EPA's Memorandum in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("EPA Opposition") at 1.  Specifically, all parties agree that EPA completed the most recent required review for $NO_x$ and $SO_x$ in 1996, approximately ten years ago even though the Clean Air Act requires a review and revisions, as appropriate, every five years.  *See* EPA Opposition at 1,4.  Therefore, the only issue in dispute is the specific schedule the Court should fashion to address EPA's violation of its mandatory duty.

EPA proposes a schedule which separates the reviews for primary and secondary NAAQS.  *See* EPA Opposition at 13 – 15.  Primary NAAQS must be set to protect public health and secondary NAAQS must be set to protect public welfare, which includes soils, water, crops, vegetation, manmade materials, and wildlife.  *See* 42 U.S.C. §§ 7409(b)(1) & (2); 7602(h).  Plaintiffs do not oppose this approach and have revised their proposed schedule accordingly.  However, EPA's proposed schedule would allow a little less than 5 years from the date EPA first published its call for information in the Federal Register, which is the official start of the criteria and NAAQS review process, until EPA would complete the process.  Thus, it appears that EPA has chosen the maximum amount of time it could reasonably argue for, considering that the statute requires a review every five years, created a schedule by working backward from this date and then provided a justification for this schedule.  EPA's schedule does not include deadlines for interim steps in the review process.  Considering EPA's "perfect" record of never completing a NAAQS review within the five year time frame mandated by Congress, it is imperative that interim deadlines be imposed in order to keep EPA on track with completing the process in the time frame the Court ultimately imposes.

EPA insists that its proposed schedule is the *only* schedule that will allow EPA to satisfy Clean Air Act § 109(d)(1) because: (1) mandating compliance with the Clean Air Act in accordance with Plaintiffs' schedule will result in a scientifically unsound review likely to be struck down upon judicial review; (2) the Clean Air Act circumscribes this Court's discretion to set interim deadlines; (3) EPA's other regulatory efforts have or will reduce $NO_x$ and $SO_x$ concentrations in the ambient air; and (4) the Court should defer to EPA's judgment that compliance with Plaintiffs' schedule is impossible.

Because EPA provided new information on how it plans to handle the NOx and SOx reviews, Plaintiffs' have carefully reviewed EPA's suggested relief and are proposing a revised schedule. Plaintiffs retained an expert, David P. Howekamp, to provide an impartial assessment of EPA's suggested schedule. Mr. Howekamp's declaration is attached hereto as Exhibit 1 and Plaintiffs' revised proposed schedule is attached as Exhibit 2. Plaintiffs' requested relief, set forth in their Revised Proposed Order, would allow EPA three years and six and one-half months from the date EPA formally initiated review for $NO_x$, and three years and three and one-half months from the date EPA formally initiated review for $SO_x$, to complete the reviews of the primary NAAQS and criteria, which EPA now calls a science assessment, for those pollutants.[2]

---

[2] All of the time periods discussed here are calculated from the date EPA formally initiated review for $NO_x$ and $SO_x$. It may be more appropriate to consider the amount of time available to EPA to complete the reviews at issue as calculated from the filing of the complaint in this case. According to the Declaration of Steven Page attached as Exhibit 1 to EPA's Opposition ("Page Declaration"), "EPA has been accumulating additional information concerning the health and welfare effects of both these pollutants," since the last NAAQS reviews, and upon receiving Plaintiffs' notice of intent to sue letter, "EPA accelerated these activities." Page Declaration ¶ 50. Thus EPA has been "working" on the NAAQS reviews at least since the complaint was filed. EPA formally initiated review of the $NO_x$ and $SO_x$ NAAQS only after Plaintiffs filed this suit in September 2005. Approximately three months after this suit was filed, EPA formally initiated review of the $NO_x$ NAAQS. 70 Fed. Reg. 73, 236 (December 9, 2005). EPA delayed another five months before formally initiating review of the $SO_x$ NAAQS. 71 Fed. Reg. 28,023 (May 15, 2006). To the extent that the $SO_x$ deadlines are roughly three months shorter than those

Plaintiffs' schedule allows EPA three years and five and one-half months from the date of the SOx call for information for the combined $NO_x$/ $SO_x$ secondary NAAQS review. Plaintiffs' proposed schedule includes deadlines for EPA to complete one interim step in each review process, that is a deadline for the first draft of the science assessment, in order to ensure that EPA stays on track over this lengthy schedule.

As shown below, Plaintiffs' proposed remedy is both possible and reasonable because: (1) the Clean Air Act NAAQS review is a strict guideline. That is, the Clean Air Act does not provide EPA an opt-out or extension; (2) strong evidence exists that EPA can accomplish a proper and defensible NAAQS review of $NO_x$ and $SO_x$ within Plaintiff's proposed timeframe; and (3) nothing in the Clean Air Act limits this Court's equitable power to fashion the relief it deems proper for these admitted violations.

## II. PLAINTIFFS' REVISED PROPOSED SCHEDULE

Plaintiffs propose the following schedule for completion of the tasks necessary for the primary and secondary criteria and NAAQS reviews for $NO_x$ and $SO_x$:

A.     NOx PRIMARY NAAQS

| Task | Date Complete | Duration |
|------|---------------|----------|
| Call for Information: Science Assessment | December 9, 2005 | |
| - First Draft released | February 28, 2007 | 14.5 months |
| - Final science assessment released | March 15, 2008 | 12.5 months |

---

for $NO_x$, this difference is explained by EPA's delay in formal initiation of the $SO_x$ review while EPA was informally conducting the review.

4

Rulemaking

|  |  |  |
|---|---|---|
| - Sign proposed rule | January 15, 2009 | 10 months |
| - Sign final rule | June 30, 2009 | 5.5 months |

Proposed and final rule to be forwarded to the Office of the Federal Register within 10 days of signature

### B.   SOx PRIMARY NAAQS

| Task | Date Complete | Duration |
|---|---|---|
| Call for Information: | May 15, 2006 | |

Science Assessment

|  |  |  |
|---|---|---|
| - First Draft released | April 30, 2007 | 11.5 months |
| - Final science assessment released | May 15, 2008 | 12.5 months |

Rulemaking

|  |  |  |
|---|---|---|
| - Sign Proposed Rule | March 15, 2009 | 10 months |
| - Sign Final Rule | August 30, 2009 | 5.5 months |

Proposed and final rule to be forwarded to the Office of the Federal Register within 10 days of signature

### C.   NOx AND SOx SECONDARY NAAQS

| Task | Date Complete | Duration |
|---|---|---|
| Call for Information: | December 9, 2005& May 15, 2006 | |

Science Assessment

|  |  |  |
|---|---|---|
| - First Draft | June 30, 2007 | 13.5 months |
| - Final science assessment released | July 15, 2008 | 12.5 months |

Rulemaking

|  |  |  |
|---|---|---|
| - Sign proposed rule | May 15, 2009 | 10 months |
| - Sign final rule | October 31, 2009 | 5.5 months |

Proposed and final rule to be forwarded to the Office of the Federal Register within 10 days of signature

Plaintiffs proposed schedule is based on the reasonable elapsed times identified by Plaintiffs' independent expert David P. Howekamp for the activities included in EPA's proposed schedule. For the $NO_x$ and $SO_x$ primary standards, Mr. Howekamp calculated the elapsed times from the beginning of the Science Assessment process identified by EPA in its proposed schedule.[3] With regard to the $NO_x$ and $SO_x$ secondary standards, however, Mr. Howekamp determined that the amount of time EPA requested for planning was excessive, and that EPA should begin the Science Assessment two and one-half months sooner, on August 15, 2006. Ex. 1 Declaration of David P. Howekamp ("Howekamp Declaration") ¶ 9. The total elapsed months proposed by Plaintiffs and identified by Mr. Howekamp differ because Plaintiffs' schedule begins with the call for information for each pollutant while Mr. Howekamp's calculation of elapsed months begins with EPA's proposed start of the science assessment for $NO_x$.

### III.  ARGUMENT

A.    EPA'S RELIANCE ON AN INAPPLICABLE "IMPOSSIBILITY" DEFENSE IS UNFOUNDED.

EPA has not met its heavy burden to show that compliance with the Clean Air Act is impossible or infeasible. *See Am.Lung Ass'n v. Browner*, 884 F. Supp. 345, 347 (D. Ariz. 1994) (citing *Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 899 (N.D. Cal. 1984)). Despite EPA's protests, EPA can comply with Plaintiffs' schedule as evidenced by EPA's past NAAQS reviews, EPA's claim that it has developed a timelier and efficient NAAQS review process, and the testimony of Plaintiffs' Expert David P. Howekamp.

---

[3] Attachment A of the Page Declaration indicates that EPA will begin the Science Assessment for NOx primary standards on June 15, 2006 and for SOx primary standards on August 15, 2006 by beginning the preparation of workshop materials.

1.    THE IMPOSSIBLITY DEFENSE IS NOT APPLICABLE TO THIS
        CASE

EPA acknowledges that the Court has equitable discretion to fashion an appropriate

remedy for EPA's admitted violation of a clear Clean Air Act mandate; a mandate that is

essential to the proper administration of the Clean Air Act and thus to the protection of public

health and welfare.  EPA Opposition at 16.  EPA cites *Natural Resources Defense Council v.

Train*, 510 F.2d 692, 713 (D.C. Cir. 1975) for the proposition that this Court's equitable

discretion does not allow it to order EPA to do the "impossible" or "infeasible."  EPA

Opposition at 16.

*Train* is not applicable.  *Train* was a Clean Water Act citizen suit brought to compel the

EPA to issue pollution control regulations that plaintiffs claimed were overdue.  The statute

required the EPA to publish pollution control regulations by October 18, 1973, and annually

thereafter.  The court held that there were two types of regulations at issue: those that the statute

required to be promulgated by October 18, 1973, and those that were not subject to the

mandatory deadline.  *Id.* at 697, 705-06.  It was only with regard to the regulations not subject to

the mandatory deadline that the court discussed the possible "impossibility" of EPA complying

with the lower court's order that required publication by the mandatory deadline of *all* the

regulations, including those not subject to the deadline under the terms of the Clean Water Act.

*Id.* at 710-13.  In this case, EPA concedes that it had a mandatory duty to comply with an explicit

deadline to review, and revise as appropriate, the NOx and SOx criteria and NAAQS by 2001

and again by 2006.  Therefore, the two types of circumstances that might cause justifiable

agency delay in *Train* with respect to the non-mandatory deadlines are inapplicable in this case.

It is worth noting that in *Train*, the D.C. Circuit cautioned that "officials may seize on a

remedy made available for extreme illness and promote it to the daily bread of convenience." *Id.*

at 712.  Unfortunately, that is the situation here.


> 2.    EPA HAS COMPLETED OTHER NAAQS REVIEWS THAT HAVE
> WITHSTOOD JUDICIAL SCRUTINY IN LESS TIME THAN
> PROPOSED BY PLAINTIFFS.


The Court should reject EPA's claim that to meet any schedule more demanding than the

one EPA proposes is impossible, because EPA has made this claim before and hindsight proves

that EPA's claim was false.  In a very similar case, *Am. Lung Ass'n v. Browner*, 884 F. Supp. 345

(D. Ariz. 1994), EPA also invoked the "impossibility" defense.  EPA's pleas for an extended

schedule were soundly rejected in that case, where seven years had passed since the last NAAQS

review and revision for particulate matter.  The court stated:

> Because almost 12 years have passed since 1982 when PM criteria were last
> reviewed and almost 7 years have passed since 1987 when NAAQS was last
> reviewed and revised, the EPA has not merely missed a deadline, it has nullified
> the congressional scheme for a fixed interval review and revision process.  The
> EPA further frustrates congressional intent by proposing a 4-year, 3-month review
> schedule with a final promulgation date of December 1, 1998. This schedule
> extends the mandated 5-year interval review and any possibility of revision to 11
> years.

*Id.* at 347.  In *Am. Lung Ass'n v. Browner*, EPA published its initial call for information,

which formally begins the review process, for the air pollutant particulate matter on April

12, 1994.  59 Fed. Reg. 17375 (April 12, 1994).  The court ordered EPA to complete the

NAAQS review and revision two years and nine months from that date.  While EPA later

sought a six month extension, it adopted new NAAQS for particulate matter on July 18,

1997, three years and three months from the date it published its call for information. 62

Fed. Reg. 38652 (July 18, 1997).  This new NAAQS ultimately withstood all the legal

challenges it faced.  *See Whitman v. Am. Trucking Ass'n*, 531 U.S. 457 (2001) and *Am. Trucking Ass'n v. EPA*, 283 F.3d 355 (D.C. Cir. 2002) (on remand).   The schedule for the particulate matter NAAQS and criteria review is consistent with Plaintiffs' proposed schedule in this case, and demonstrates that EPA can accomplish in practice what it calls "impossible" in litigation.

Recently, as part of its effort to streamline and make timelier the NAAQS and criteria review process, EPA solicited comments from members of the Clean Air Scientific Advisory Committee ("CASAC") regarding the NAAQS review process.  In his comments, Dr. George T. Wolff noted that the reviews for CO, $NO_2$, $SO_2$ and PM (1994-1996 review) were only *three years* in length.  Dr. George T. Wolff, Comments on the NAAQS Review Process 1 (March 3, 2006) (attached as Exhibit A to, Exhibit 3, the Declaration of Robert Ukeiley) ; *see also Notification of a Public Meeting of the CASAC*, 71 Fed. Reg. 34130 (June 13, 2006).  Thus, Plaintiffs proposed schedule is not inconsistent with the agency's prior accomplishments.

Most recently, EPA was ordered to complete the NAAQS review for lead in three years and ten months.  *Missouri Coalition for the Environment v. U.S. EPA*, Civil No. 4:04cv00660 ERW, 2005 WL 2234579 (E.D. Mo. Sept. 14, 2005).  Thus far, EPA has satisfied that schedule, publishing notice of the second external review draft of the criteria document on June 13, 2006. 71 Fed. Reg. 34129 (June 13, 2006).

EPA claims that any review that could be completed by Plaintiffs' proposed deadline would not be legally defensible.  On the contrary, several EPA NAAQS reviews have been completed in a shorter time than Plaintiffs here propose, and those NAAQS decisions have been upheld upon judicial review.  For example, EPA set the first NAAQS for lead in 1978 and although it was completed in only two years, the standard withstood judicial scrutiny. *See Lead*

*Industries Ass'n v. EPA,* 647 F.2d 1130, 1184 (D.C. Cir. 1980). Similarly, both the particulate

matter and ozone standards promulgated in response to *Am. Lung Ass'n  v. Browner*, withstood

judicial review, though they were completed in only three years and three months. *See Whitman

v. Am. Trucking Ass'n*, 531 U.S. 457 (2001) and *Am. Trucking Ass'n v. EPA*, 283 F.3d 355 (D.C.

Cir. 2002) (on remand). EPA's claim that Plaintiffs' review schedule, which is hardly expedited

considering what EPA has accomplished in the past, will lead to substandard reviews is clearly

baseless.

> 3.    EPA'S NEW NAAQS REVIEW PROCESS SHOULD MAKE THE
>        NAAQS REVIEWS TIMELIER.

According to EPA, the agency is undertaking a significant reorganization to ensure that it

can meet its statutory responsibilities. *See* EPA Opposition, Ex. 1 ("Page Declaration") ¶ 23.

The new NAAQS review process outlined by EPA is purportedly designed to make the review

process timelier than the reviews completed in the past. EPA states no fewer than five times in

its Opposition Brief that the purpose of the NAAQS process revisions is to increase the

timeliness and efficiency of the NAAQS reviews. EPA Opposition at 9, 11, 12. EPA explains

that the key elements in the NAAQS review "will be focused and coordinated in a way that will

strengthen the NAAQS review process, including review by CASAC, and will promote the

*overall timeliness* of the review by avoiding redundancy and inefficiency in the document

preparation and review process." EPA Opposition at 9; Page Declaration at ¶ 26(emphasis

added).

As explained above, EPA completed the review of the particulate matter criteria and

NAAQS in less than three and a half years. If one accepts EPA's claim that its new review

process will speed things along, then there is no reason to believe that EPA cannot complete its

review of the SOx and NOx NAAQS in the total 46.5 month schedule proposed by Plaintiffs.

4.    PLAINTIFFS' INDEPENDENT EXPERT CONFIRMS THAT THE
AGENCY IS ABLE TO COMPLETE THE REVIEW ACCORDING TO
PLAINTIFFS' PROPOSED SCHEDULE.

EPA relies almost completely on the declaration of EPA's Stephen Page to support its

requested schedule, which would allow just under 5 years for EPA to complete all the mandatory

tasks.  EPA asks for deference to EPA's expertise, which it claims is manifest in Stephen Page's

declaration, on this issue.  However, as the D.C. Circuit explained in *Linemaster Switch Corp v.*

*E.P.A.*, 938 F. 2d 1299, 1303 (D.C. Cir. 1991), "it would indeed be odd to conclude that

Congress implicitly entrusted a laggard agency with the authority to devise a remedy for its own

untimeliness."

The declaration of Plaintiffs' independent expert David Howekamp, supports the

conclusion that the $NO_x$ and $SO_x$ NAAQS can be successfully reviewed in compliance with

Plaintiffs' revised proposed schedule.  Mr. Howekamp was the director of the Air Division for

EPA's Region 9 for eighteen years.  Ex. 1 ("Howekamp Declaration") ¶ 2.  In that role, he was

personally responsible for the preparation of numerous Clean Air Act rulemakings, and

consequently has first-hand knowledge of the technical and policy considerations in such matters

and the management demands and resource requirements for producing complex Federal

rulemakings.  *Id.*  Moreover, Mr. Howekamp has personal knowledge of the criteria documents

and the health and welfare effects of $NO_x$ and $SO_x$, and of the technical and policy considerations

with regard to the $NO_x$ and $SO_x$ NAAQS.  *Id.*  As such, Mr. Howekamp is qualified to offer his

opinion on a reasonable yet expeditious schedule for the completion of the $NO_x$ and $SO_x$

NAAQS and criteria review at issue in this case.

Mr. Howekamp reviewed the May 31, 2006, Declaration of Steven D. Page submitted by

11

EPA and determined that EPA's schedule can be "greatly shortened." *Id.* at 3. Considering past agency performance and EPA's proposed schedule, Mr. Howekamp determined that EPA could complete many specific tasks in the NAAQS and criteria review process more efficiently. *Id.* ¶ 5. For example, EPA proposes three months to complete the peer review workshops, while EPA was able to complete multiple workshops in one month for the NAAQS review of lead that is currently ongoing. *Id.* Mr. Howekamp identified the specific activities that EPA had allotted excessive time to in his declaration. *Id.* ¶¶ 5, 9. Mr. Howekamp did concur with EPA's assessment of some aspects of the schedule, however. For example, Mr. Howekamp agreed with EPA that the assessment documents for the combined $NO_x$ and $SO_x$ secondary standards would require more time than the primary standard assessments. *Id.* ¶ 9. Plaintiffs' revised proposed schedule reflects these areas of concurrence as well as the areas where, in Mr. Howekamp's expert opinion, EPA could complete the required tasks quicker.

5.      EPA'S EVIDENCE DOES NOT SUPPORT ITS CLAIM THAT AVAILABLE STAFF CANNOT PRODUCE A REVIEW QUICKER THAN EPA'S PROPOSED SCHEDULE

In its Opposition Brief, EPA claims it cannot meet deadlines quicker than in its schedule because of the limited number of qualified staff. EPA Opposition at 26-27. However, EPA's own evidence does not support this argument. EPA claims that "[s]eparate personnel *do not* carry out the review process for different pollutants." *Id.* at 27. However, Stephen Page explains in his affidavit that the Clean Air Scientific Advisory Committee (CASAC) "is supplemented by expert consultants selected for their particular expertise in fields pertinent to the *specific pollutant under review*, forming a CASAC Review Panel that includes generally about 20 members." Page Declaration ¶ 16.

EPA also asserts that over "the next five years, very few, if any of the highly skilled professional staff and managers working on the review of the NAAQS will work on only one standard." EPA Opposition at 27 (citing Page Declaration ¶ 70). However, what EPA does not say is that any of these highly skilled professional staff and managers will need to work on more than one NAAQS *at the same time*. Thus, the fact that some EPA staff that may be working on the ozone NAAQS review now may have to work on the lead NAAQS in six months and the $SO_x$ and $NO_x$ NAAQS in a year does not support EPA claim for a longer schedule. The fact is that the particulate matter, ozone, lead and $SO_x$ and $NO_x$ NAAQS reviews are all staggered with different beginning dates and different ending dates. Moreover, EPA acknowledges that Congress clearly envisioned that multiple NAAQS reviews would have to be conducted in any five year period so this is not a basis for EPA to seek relief from a court. *See* EPA Opposition at 27.

> B.     NOTHING IN THE CLEAN AIR ACT LIMITS THIS COURT'S DISCRETION TO FASHION AN APPROPRIATE REMEDY FOR THESE INDIVIDUAL STATUTORY VIOLATIONS, INCLUDING INTERIM DEADLINES AND PUBLICATION IN THE FEDERAL REGISTER.

EPA argues that the Clean Air Act somehow forecloses the Court for using its traditional equitable powers to create a remedy that includes deadlines for draft documents. *See* EPA Opposition at 22 – 24. Plaintiffs revised proposed schedule narrows this dispute because Plaintiffs are now proposing a deadline for only one draft document that EPA is not proposing a deadline for; the science assessment. EPA acknowledges that it intends to prepare draft science assessments. Nevertheless, EPA refuses to have a binding deadline for the draft science assessments. EPA's argument that the Court is powerless to fashion a meaningful remedy is clearly wrong, as evidenced by the very cases EPA cites as well as others.

Many courts have held that the district courts have jurisdiction to order completion of interim tasks that are not specifically enumerated in the Clean Air Act. For example, in *Train*, the D.C. Circuit stated explicitly that "[t]he authority to set enforceable deadlines both of an ultimate and intermediate nature is an appropriate procedure for exercise of the court's equity powers to vindicate the public interest." 510 F.2d at 704-05. Moreover, two District Courts have imposed interim deadlines when reviewing EPA's failure to review and revise as appropriate NAAQS and criteria for other pollutants. *See Am. Lung Ass'n v. Browner*, 884 F. Supp. at 348-49 (particulate matter NAAQS); *Missouri Coalition for the Environment*, Civil No. 4:04cv00660 ERW, 2005 WL 2234579 (E.D. Mo. Sept. 14, 2005)(setting interim deadlines and ordering EPA to complete implementing activities).

Because EPA can find no precedent to support its arguments against interim deadlines, the agency rests its argument on its interpretation of the language of the Clean Air Act citizen suit provision. The Clean Air Act's citizen suit provision allows citizens to bring suit "against the Administrator where there is an alleged failure … to perform any act or duty under this chapter which is not discretionary with the Administrator," and grants the district courts jurisdiction to "order the Administrator to perform such act or duty." 42 U.S.C. § 7604(a). From this text, EPA concludes that the district courts' equitable powers are circumscribed in fashioning relief when presented with such a claim.

For the general principle that Congress can limit the scope of a Federal court's equitable discretion, EPA cites *U.S. v. Phillip Morris*, 396 F.3d 1190 (D.C. Cir. 2005). In *Phillip Morris*, unlike in the case at bar, the government asked the court to order "disgorgement" of ill-gotten profits under the Racketeer Influenced and Corrupt Organizations Act ("RICO") civil remedies provisions at 18 U.S.C. § 1964. Section 1964 extended jurisdiction only to "prevent and

14

restrain" violations, which the court in *Phillip Morris* found only included forward-looking prospective relief. In *Phillip Morris*, the court was distinguishing between broad *types* of remedies, not the degree of specificity with which a court can rule.

Plaintiffs do not disagree that the district courts' jurisdiction is limited by 42 U.S.C. § 7604(a) to hearing those cases which allege the Administrator has not met its mandatory duties, but the fact that the jurisdiction of the court is extended to ordering the Administrator to "perform such act or duty," does not displace the courts' equitable authority to prescribe to EPA the manner, method and schedule of such performance. To the extent Plaintiffs' were asking for a civil penalty in addition to an injunction to require compliance with a mandatory duty, *Phillip Morris* would indeed stand for the proposition that Plaintiffs are not entitled to a civil penalty. Here, however, Plaintiffs request that the Court order the Administrator to comply with the Clean Air Act by reviewing and deciding whether to revise the $NO_x$ and $SO_x$ criteria and NAAQS. Setting interim deadlines for a step that EPA itself acknowledges that it will take as part of the process will enable the public, Plaintiffs and the Court to monitor EPA's progress and provide certainty as to the date the NAAQS review and revision will be complete. Plaintiffs do not ask that the Court exercise unlimited equitable discretion to impose remedies not authorized by the Clean Air Act. Plaintiffs only ask that the Court order completion of the separate agency activities that are necessary to the whole. Simply put, Plaintiffs ask that the Court take steps to ensure that its order, and the law, is followed by the agency.

In deciding the appropriateness of this equitable relief, EPA comes before the Court with a long history of non-compliance. Plaintiffs are not aware of EPA ever completing a review of a NAAQS and criteria in the time frame set forth by Congress. As for $SO_x$ and $NO_x$, EPA is essentially *10 years* behind schedule. Under EPA's proposed schedule, we would have to wait

between two years and two and a half years from now until we would be able to ensure EPA is making progress towards accomplishing its mandatory duty. If EPA got off schedule, as they so often do, it would be difficult to fashion a meaningful solution at that point. Thus, the Court has the equitable power to include a deadline for the draft science assessments and should include such a deadline in light of EPA's abysmal record with this task and the serious public health and welfare consequences at stake.

Finally, EPA bases its schedule on deadlines to sign the proposed and final rules and does not propose any mandatory obligation to forward these documents to the Office of the Federal Register for publication. The Clean Air Act provides for judicial review only based on the date decisions like whether or not to revise a NAAQS are published in the Federal Register. *See* 42 U.S.C. § 7607(b)(1). Thus, an obligation for EPA to sign a document without a concurrent obligation to have the item published in the Federal Register renders the obligation meaningless because it is not subject to judicial review. In addition, EPA has a history of long delays between signing rules and having them published in the Federal Register. *See e.g.* 70 Fed. Reg. at 25317 (May 12, 2005)(EPA's CAIR rule was signed March 10, 2005 but not published until over two months later on May 12, 2005). EPA should not be allowed to grant itself yet another extension by not having to timely send its signed documents to the Federal Register. Rather, whatever deadlines the Court imposes should also require that EPA forward the relevant documents to the Office of Federal Register within 10 days of signing.

C.    EPA'S CLAIMS THAT OTHER REGULATORY EFFORTS HAVE
        PRODUCED A REDUCTION IN $NO_x$ AND $SO_x$ POLLUTION ARE
        IRRELEVANT.

EPA tries to imply that it is not critical for the Court to order an expeditious review

schedule for $NO_x$ and $SO_x$ because the agency's other regulatory efforts are successfully decreasing the rate at which $NO_x$ and $SO_x$ are emitted into the ambient air. *See* EPA Opposition at 6-7. EPA's assertions that the emission of $NO_2$ and $SO_2$ decreased between 1995 and 2005 are irrelevant. By EPA's own admission, annual anthropogenic emissions of these pollutants remain high (19 **million tons** per year and 15 **million tons** per year respectively). EPA's Stephen Page acknowledges "the seriousness of the health effects for those potentially at risk from exposure to these pollutants…" Page Declaration ¶ 73. EPA does not provide any support for its casual implication that the relatively minor emission reductions EPA cites have resulted in ambient concentrations that do not have adverse impacts on public health and welfare risks associated with $NO_2$ and $SO_2$. However, we know that at least the American Academy of Pediatrics thinks there is cause for concern that current levels of NOx, which are below the NAAQS set in 1971, are causing injury to our children. See EPA Opposition, Ex. 3 (Grant Declaration) at ¶ 7.

## IV.  CONCLUSION

Therefore, for the reasons explained above Plaintiffs respectfully request that the Court grant summary judgment as to Plaintiffs' first and third claims for relief, order EPA to complete a thorough review of the air quality criteria and NAAQS for $NO_x$ and $SO_x$ in accordance with 42 U.S.C. § 7409(d)(1), and further order Defendant to conclude the review of the $NO_x$ air quality criteria and primary NAAQS by June 30, 2009, the review of the $SO_x$ air quality criteria and primary NAAQS by August 30, 2009, and the review of the $NO_x$ and $SO_x$ secondary NAAQS by October 31, 2009 while in all cases complying with the interim deadlines and forwarding signed documents to the Office of the Federal Register within 10 days of signing.

Respectfully submitted,

/s/ ROBERT UKEILEY
Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
433 Chestnut Street
Berea, KY 40403
Tel: (859) 986-5402
Fax: (859) 986-1299
E-mail: rukeiley@igc.org

Counsel for Plaintiffs

Dated: July 10, 2006

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                              )
CENTER FOR BIOLOGICAL DIVERSITY               )
et al.,                                       )
                    Plaintiffs,               )
                                              )
v.                                            )          Civ. No. 05-1814 (JGP)
                                              )
STEPHEN L. JOHNSON                            )
Administrator                                 )
United States Environmental Protection Agency )
                                              )
                    Defendant.                )
_____)

## PLAINTIFFS' RESPONSE TO DEFENDANT STEPHEN L. JOHNSON'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs respond to Defendant Stephen L. Johnson's Statement of Undisputed Material Facts as follows:

Defendant's Fact 1:

EPA has failed to perform its nondiscretionary duty under section 109(d) of the Clean Air Act, 42 U.S.C. § 7409(d), to review, and, if appropriate, revise the existing air quality criteria for nitrogen oxides ("NO$_x$") and sulfur oxides ("SO$_x$") and national ambient air quality standards ("NAAQS") for nitrogen dioxide ("NO$_2$") and sulfur dioxide ("SO$_2$") (jointly referred to herein as the "Pollutants").

**Plaintiffs' Response:**

The facts stated in paragraph 1 are material and not disputed.

Defendant's Fact 2:

EPA has been working to restructure the NAAQS review process in order to strengthen the NAAQS review process and to promote the overall timeliness of the review by avoiding redundancy and inefficiency in the document preparation and review process.  Page Decl. ¶ 26.

**Plaintiffs' Response:**

The facts stated in paragraph 2 are material and not disputed.

Defendant's Fact 3:

The NAAQS review process consists of two phases: assessment and related planning, and rulemaking.  Page Decl. ¶ 9. In the assessment phase, EPA must complete four steps: planning, science assessment, risk and exposure assessment, and policy assessment, which is linked to the rulemaking phase.  At the close of the assessment stage, EPA will sign a notice of proposed rulemaking addressing the issue of whether a revision of the NAAQS is appropriate. After allowing an opportunity for public comment, the Agency will sign a final rule on the NAAQS review. *Id*. ¶ 26-36.

**Plaintiffs' Response:**

Plaintiffs dispute the facts in Defendant's Fact 3.  The requirements for the NAAQS review process are contained in the Clean Air Act section 108 and 109 , 42 U.S.C. §§ 7408(a)(2) and 7409(a) and (b).  The statute requires that EPA issue air quality criteria that accurately reflects the "latest scientific knowledge useful in indicating the kind and extent of all identifiable effects on public health or welfare ...," 42 U.S.C. § 7408(a)(2), and that NAAQS be promulgated through rulemaking, 42 U.S.C. § 7409.  Nothing in the statute requires that EPA complete these tasks in the four steps identified in Defendant's Fact 3, rather, EPA *chooses* to organize its work as described in Defendant's Fact 3.

Defendant's Fact 4:

In 1971, EPA promulgated primary and secondary NAAQS for $NO_2$, each set at 0.053 parts per million averaged annually.  36 Fed. Reg. 8,186 (April 30, 1971). In 1978 EPA commenced a review of the air quality criteria, which covered both adverse health effects of acute exposures as well as a broader assessment of health and ecological effects associated with both short-term and long-term exposures to $NO_2$ and other NOx compounds.  These reviews were reflected in a revised criteria document issued in 1982.  In 1985 EPA issued a final decision, based on the revised air quality criteria, to retain the NAAQS for $NO_2$. 50 Fed. Reg. 25,532 (June 19, 1985). During the 1990's, EPA conducted an extensive review of the $NO_2$ NAAQS and the related air quality under section 109(d)(1) of the Act. With full involvement of CASAC and the public, this review led to publication of a revised criteria document (1993) and a staff paper (1995). After consideration of these documents, EPA determined in 1996 that revisions to the primary and secondary NAAQS for $NO_2$ were not appropriate. 61 Fed. Reg. 52,852 (Oct. 8, 1996). In this final determination in 1996,  EPA noted that all areas of the United States were in attainment of the existing standards for $NO_2$. Declaration of Stephen D. Page, Director of the Office of Air Quality Planning and Standards, Office of Air and Radiation, EPA, ¶ 39 (May 31, 2006) ("Page Decl.").

**Plaintiffs' Response:**

The facts contained in Defendant's Fact 4 are material and undisputed.

Defendant's Fact 5:

During the 1980's and 1990's, EPA conducted an extensive review of the air quality criteria and NAAQS for $SO_2$ under section 109 (d)(1) of the Act. With full involvement of CASAC and the public, this review led to publication of a revised criteria document (1982), a staff paper (1982), a criteria document addendum (1986), a staff paper addendum (1986), a criteria document supplement (1994), and a staff paper supplement (1994).  After consideration of these documents, EPA determined that revisions to the primary and secondary NAAQS for $SO_2$ were not appropriate in 1996, aside from several minor technical changes.  58 Fed. Reg. 21,351 (April 21, 1993) (secondary NAAQS); 61 Fed. Reg. 25,566 (May 22, 1996)(primary NAAQS). That decision with respect to the primary standard was subsequently remanded.  Page Decl. ¶ 46.

**Plaintiffs' Response:**

The facts contained in Defendant's Fact 5 are material and undisputed.

Defendant's Fact 6:

Since the last reviews of the NAAQS for $NO_2$ and $SO_2$, EPA has been accumulating additional information concerning the health and welfare effects of both these pollutants. Upon receiving notice that the plaintiffs intended to initiate this lawsuit, EPA accelerated these activities to enable formal commencement of the review as rapidly as possible. Among other things, NCEA began assessing the likely nature and scope of the  relevant scientific assessments in light of trends in research since the last reviews; identifying key scientific questions and issues that will need to be addressed in the science assessments; and identifying external experts who would be qualified to serve as authors or reviewers in the development of science assessments or as participants in peer review workshops.  NCEA and OAQPS have been coordinating efforts on

planning for the reviews as a whole, including identifying key policy-relevant issues that would appropriately frame the reviews, and the related critical scientific questions, and determining the most efficient approach to organizing these reviews of the both the primary and secondary standards for both $NO_2$ and $SO_2$. Page Decl. ¶ 50.

**<u>Plaintiffs' Response:</u>**

The facts contained in Defendant's Fact 6 are material and undisputed.

<u>Defendant's Fact 7:</u>

EPA has prepared and published Federal Register notices for each of the pollutants, formally initiating the current reviews of the criteria and NAAQS and inviting interested parties to help assure that all relevant information will be considered.  The call for information related to $NO_2$ was published in the Federal Register on December 9, 2005.  The call for information related to $SO_2$ was published on May 15, 2006. Page Decl. ¶ 51.

**<u>Plaintiffs' Response:</u>**

The facts contained in Defendant's Fact 7 are material and undisputed.

<u>Defendant's Fact 8:</u>

EPA currently intends to undertake closely coordinated reviews of the NAAQS for $NO_2$ and $SO_2$ on schedules that account for the important interrelationships between these two pollutants, most importantly in terms of their interdependent atmospheric chemistry and their interrelated effects on the environment.  To most efficiently and effectively address these interrelationships, especially taking into account the complex science underlying the environmental affects of $NO_x$ and $SO_x$, EPA intends to review the public health impacts of $NO_x$ and $SO_x$ in two closely coordinated reviews, and to review the interrelated environmental effects of NO and SOx jointly, in a separate review of the secondary NAAQS for these pollutants,

somewhat offset from the two reviews of the primary NAAQS for each pollutant.  Page Decl. ¶

**Plaintiffs' Response:**

      The facts contained in Defendant's Fact 8 are material and undisputed.

Defendant's Fact 9

      EPA is accordingly planning schedules for the reviews of the NAAQS for $NO_2$ and $SO_2$

that consists of a review of the primary standard for $NO_2$ that is coordinated with and followed

closely in time by a review of the primary standard for $SO_2$. EPA is further planning to undertake

a single review of the secondary standards for these two pollutants together. Page Decl. ¶ 53.

**Plaintiffs' Response:**

      The facts contained in Defendant's Fact 9 are material and undisputed.

Defendant's Fact 10

      As detailed in the Page Declaration, the resulting proposed schedules call for completion

of  final science assessments addressing the human health effects of $NO_x$ and $SO_x$ by July 11,

2008 and September 12, 2008, respectively; and a science assessment addressing the

environmental effects of both NO and SO by December 12, 2008.  EPA will then sign for

publication in the Federal Register notices of proposed rulemaking addressing the primary

NAAQS for $NO_2$ and the primary NAAQS for $SO_2$ by August 28, 2009 and October 30, 2009,

respectively; and notices of final action on the primary standard proposals by May 21, 2010 for

$NO_2$ and by July 30, 2010 for $SO_2$ EPA will sign for publication a notice of proposed rulemaking

addressing the secondary NAAQS for both $NO_2$ and $SO_2$ by February 12, 2010 and a notice of

final action on the secondary standard proposal for $NO_2$ and $SO_2$ by November 19, 2010. Page

Decl. ¶ 60.

**Plaintiffs' Response:**

The facts contained in Defendant's Fact 10 are material and undisputed.

Defendant's Fact 11:

These are very ambitious schedules and represent the minimum time reasonably necessary to complete each of the reviews, consistent with satisfying applicable legal requirements and reaching sound and scientifically supportable decisions.  Page Decl. ¶ 60.

**Plaintiffs' Response:**

Plaintiffs dispute the facts contained in Defendant's Fact 11.  EPA has completed air quality criteria and NAAQS review pursuant to sections 108 and 109 of the Clean Air Act in less time than they here propose.  *See Am. Lung Ass'n v. Browner*, 884 F. Supp. 345 (D. Ariz. 1994) (EPA completed NAAQS review for particulate matter and ozone on July 18, 1997, three years and three months from the date it published its call for information. *See* 62 Fed. Reg. 38652.). The particulate matter and ozone standards promulgated in response to *Am. Lung Ass'n v. Browner* withstood judicial review, though they were completed in only three years and three months.  *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) and *Am. Trucking Ass'ns v. EPA*, 283 F.3d 355 (D.C. Cir. 2002) (on remand). Additionally, the U.S. District Court for the Eastern District of Missouri recently ordered EPA to complete its review of the air quality criteria and NAAQS for lead in less time than EPA here proposes.  *See Missouri Coalition for the Environment v. U.S. EPA*, Civil No. 4:04cv00660 ERW, 2005 WL 2234579 (E.D. Mo. Sept, 14, 2005).  Thus far, EPA is on schedule with this review.  71 Fed Reg. 34129 (June 13, 2006). Additionally, the Declaration of David Howekamp, attached as Exhibit 1 to Plaintiffs Reply in Support of Their Motion for Summary Judgment, indicates that a reasonable schedule is significantly shorter than that proposed by E.P.A.  Howekamp Declaration ¶ 3.  Thus the record

before the Court does not support Defendant's Fact 11.


                                        Respectfully submitted,


                                        /s/ ROBERT UKEILEY
                                        Robert Ukeiley (MD14062)
                                        Law Office of Robert Ukeiley
                                        433 Chestnut Street
                                        Berea, KY 40403
                                        Tel: (859) 986-5402
                                        Fax: (859) 986-1299
                                        E-mail: rukeiley@igc.org


                                        Counsel for Plaintiffs

Dated: July 10, 2006