IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 05-1814 (JGP) |
| STEPHEN L. JOHNSON, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENC, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

**EPA'S REPLY MEMORANDUM IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Court must resolve the parties' dispute over the length of time EPA requires to complete its statutory obligation to review, and, if appropriate, revise the existing air quality criteria for nitrogen oxides ("NO$_x$") and sulfur oxides ("SO$_x$") and the National Ambient Air Quality Standards ("NAAQS") for nitrogen dioxide ("NO$_2$") and sulfur dioxide ("SO$_2$") (jointly referred to herein as the "Pollutants"), pursuant to section 109(d) of the Clean Air Act ("CAA"), 42 U.S.C. § 7409(d). (This process is generally referred to hereafter as "review of the NAAQS," or "NAAQS review" or "review"). Plaintiffs (jointly referred to as "CBD"), in responding to the cross-motion for summary judgement filed by defendant Steven Johnson, Administrator, United States Environmental Protection Agency ("EPA"), have modified their request for relief, thereby

narrowing the scope of the differences to be resolved between the parties's respective positions.[1/]

CBD does not take issue with EPA's conclusion that the most effective approach for the NAAQS reviews for the pollutants is to have three separate reviews on staggered schedules. The three proceedings, all of which are currently underway, are: (1) $NO_2$ (Primary/Public Health Standards); (2) $SO_2$ (Primary/Public Health Standards); and (3) $NO_2$ and $SO_2$ (Secondary, Public Welfare Standards). CBD agrees that the actions must be staggered and that the third proceeding will take longer than the others, although the parties still disagree on the amount of time necessary for the Agency to produce scientifically sound and legally defensible decisions. Below is a comparison of the parties' proposed deadlines for EPA's signature of the final rules at issue:

|  | EPA | CBD | Difference |
|---|---|---|---|
| $NO_2$ (Primary/Public Health) | May 20, 2010 | June 30, 2009 | 10.5 months |
| $SO_2$ (Primary/Public Health) | July 30, 2010 | Aug. 30, 2009 | 11 months |
| $NO_2$ and $SO_2$ (Secondary, Public Welfare Standards | Nov. 19, 2010 | Oct. 31, 2009 | 12.5 months |

As EPA previously explained, each NAAQS review is completed in five phases: planning, science assessment, risk and exposure assessment, policy assessment and rulemaking. CBD does not take issue with EPA's approach. Exhibit 1 hereto summarizes the different schedules for the key steps in this process for purposes of this case. CBD's claim that each of these reviews can be completed in less time than estimated by EPA is without merit. In advocating its shorter schedule, CBD claims that the question of whether compliance with its

---

[1/]   *See* EPA's Memorandum in Support of Cross-motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment (May 31, 2006) ("EPA Memo"); Plaintiffs' Memorandum in Reply in Support of Motion for Summary Judgment and in Opposition to Cross-motion for Summary Judgment (July 10, 2006) ("CBD Opp.")

proposed remedy is impossible has no relevance, a claim that defies common sense. CBD also erroneously claims that EPA's actions in other NAAQS reviews show that the Agency can properly complete the NAAQS reviews more expeditiously than the Agency claims. Finally, CBD purports to identify several discrete reductions in EPA's schedule that could be made without impairing the necessary quality of the Agency's decision-making based on the recommendations of their declarant, who lacks experience in NAAQS reviews or comparable national rulemakings.

## ARGUMENT

### I.  CBD'S CLAIM THAT IMPOSSIBILITY IS NOT A DEFENSE LACKS MERIT

CBD's assertion that the Agency is not entitled to assert a defense that compliance with a shorter schedule would be "impossible," CBD Opp. at 7-8 (citing *Natural Res. Defense Council v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975), suggests that the Court should undertake an exercise in futility. EPA addressed *Train* in its prior brief. EPA Memo at 16-17. Rather than repeat that argument, EPA will simply point out that CBD's argument suggests that the Court could order the Agency to do the impossible. While there is certainly room for debate over what is possible, the suggestion that the Court would order EPA to take action that the Court itself considered impossible is not tenable.

### II.  INTERIM DEADLINES ARE NOT APPROPRIATE

Any remedy afforded by the Court should be limited to establishing deadlines for the duties mandated by CAA section 109(d): to review, and, if appropriate, revise the existing air quality criteria for the Pollutants. Accordingly, EPA's proposed order establishes dates for (1) completing review of the air quality criteria (the science assessment); (2) signing the notice of proposed rulemaking to address whether revisions are appropriate, and if so, what the revisions

should be; and (3) signing the final rule. In contrast, CBD asks the Court to set deadlines for: (1) release of the first draft of the science assessment; (2) signature of the notice of proposed rulemaking; (3) signature of the final rule; and (4) transmission of the signed final rule to the Office of Federal Register. CBD Opp. Exhibit 2 (Proposed Order).

As previously explained, CAA section 109 does not provide for deadlines with respect to drafts; the statute does not even address how EPA should structure the review process, beyond making adequate provision for CASAC review. EPA Memo at 19-24. The imposition of a deadline for a first draft of the science assessment is thus not supported by the statute.

The proposal that a deadline for a draft be established represents a misunderstanding as to how the overall process works. A rigid deadline for a first draft denies EPA any flexibility to respond to developments during the process of preparing the materials for and conducting the workshops that constitute the basis for preparing the first draft. At this point in time, the Agency has only a rudimentary expectation as to what complexities may surface during that process. The establishment of a deadline for the final, but not the first draft, leaves the Agency the discretion and flexibility to adjust the schedule within limited parameters based on the developments during the workshop phases.[2]

CBD suggests that establishing the deadline for the final assessment, as opposed to the draft, would allow the Agency to get too far behind on the overall schedule without being accountable to the Court. The concern is misplaced. The deadline for the final assessment

---

[2] CBD also seeks to compel EPA to reduce the time to be spent on the first draft and instead spend additional time on the later draft. This proposed reallocation is a significant mistake because the quality of the first draft is essential to the next stages of the process. *See infra* 10-11.

4

effectively limits the Agency's ability to delay issuance of the first draft without violating an order of the Court.

CBD claims that a deadline for the first draft is necessary to ensure timely progress on the exposure/risk assessment, which commences when the first draft of the science assessment is completed. *See infra* 10-11. In terms of ensuring an orderly and effective proceeding, the major goal at this phase is to have the final science assessment completed in a timely manner. EPA needs the final assessment to proceed with the subsequent stages of the NAAQS reviews, including the rulemakings. CBD's focus on a deadline for the first draft, as opposed to the final science assessment, illustrates that CBD is emphasizing speed over quality in its proposed schedule.

Moreover, CBD's claim that EPA will delay completion of the final assessment by unless a deadline for a draft is established is not supported. CBD's speculation is insufficient for an order that would restrict EPA's discretion as to when a first draft is ready for release when it is considered in light of the Agency's need to meet the deadline that the Court will establish for the final science assessment.

Transmission to the Office of Federal Register is also outside the scope of the remedy provision under the CAA citizen suit provision. Moreover, CBD's claim that EPA has a history of long delays between signing a rule and publishing them in the Federal Register is puzzling. CBD cites as proof of this supposed pattern to the delay between signature of the Clean Air Interstate Rule and its publication in the Federal Register. 70 Fed. Reg. 25,162 (May 12, 2005). That particular rule, which fills almost 250 pages in the Federal Register, was unusually long and, significantly, was not the subject of a mandatory duty claim. The suggestion that EPA somehow routinely "grants itself" yet more time by delaying the forwarding of signed rules to

5

the Federal Register office for publication is without basis and CBD does not explain how purposefully delaying publication of a final rule in the Federal Register would advantage EPA in light of the procedural requirements of section 307(d) of the CAA, 42 U.S.C. § 7607(d).

## III.   CBD'S COMPARISON OF THE INSTANT NAAQS REVIEWS TO PRIOR REVIEWS IS MISPLACED AND MISTAKEN

In support of its argument that EPA has completed other NAAQS reviews in significantly less than four years, CBD cites to comments out of context, mischaracterizes one court decision, places too heavy a reliance on another, and looks back to rulemakings nearly three decades old.

CBD characterizes a statement by a former member of CASAC, Dr. George T. Wolff, "Comments on the NAAQS Review Process," at A-27 (Mar. 3, 2006) (CBD Opp. Exh. 1), as evidence that EPA completed reviews of the NAAQS for carbon monoxide, $NO_2$, and particulate matter in three years. CBD Opp. at 9.  When the statement is read in context, however, it is clear that Dr. Wolf is referring to the time for CASAC review, not the entire process that EPA undertakes.  For example, Dr. Wolf refers to the "94-96 PM review."  As evidenced by the attachment to Dr. Wolf's comments, the CASAC review was completed in 1996.  The full NAAQS review process was not completed until 1997.  62 Fed. Reg. 38,652 (July 18, 1997). Moreover, the entire review process began in 1993, not 1994.  *See American Lung Ass'n v. Browner*, 884 F. Supp. 345, 349 (D. Ariz. 1994).

CBD also mischaracterizes the decision in *American Lung Ass'n v. Browner*, 884 F. Supp. at 349, in suggesting that EPA completed the particulate matter NAAQS review in 3.25 years.  CBD states that EPA began the process on April 12, 1994, when the call for information was published.  CBD Opp. at 8.  As noted in the opinion, however, EPA had started the review in October, 1993.  After several extensions of the Court's deadline, EPA ultimately completed

6

the review in July 1997.  *See* 62 Fed. Reg. 38,652 (July 18, 1997).  Thus, the full process for EPA to review the particulate matter NAAQS required almost four years.

CBD next points to *Missouri Coalition for the Environment v. EPA*, No. 04-00660, 2005 WL 2234579 (E.D. Mo. Sept. 14, 2005) ("*MCE*"), which it characterizes as requiring EPA to complete the lead NAAQS review in three years and ten months.  That time frame is approximately correct if the call for information is used as the start date.  It is too early, however, to tell whether this schedule will prove viable, although EPA is on track so far.  As CBD notes, EPA recently published the second draft of the criteria document for public comment.  71 Fed. Reg. 34,129 (June 13, 2006).  There is still a long way to go, however, and EPA may have to seek extensions in the future, as it did in *American Lung*.

Finally, CBD notes that EPA promulgated the original lead NAAQS in a process that took only two years.  CBD Opp. at 9-10.  That rulemaking was completed in 1978, twenty-eight years ago.  *See id*.  The scientific information available then was far more limited than at present.

**IV.  CBD MISINTERPRETS THE DISCUSSION OF THE NAAQS PROCESS REVIEW**

CBD suggests that EPA's ongoing effort to improve the overall process for reviewing the NAAQS will enable EPA to complete the particular reviews at issue more quickly than EPA has stated.  This argument is based on a misunderstanding of the purpose of the overall project described in the Page Declaration.  The goal of the Agency's ongoing effort is to establish a process so that the Agency can routinely complete the required reviews within the five-year schedule established by the statute, not to develop a standard process that routinely takes significantly less than five years.  Accordingly, CBD's suggestion that the Agency's new procedures will enable it to meet a truncated schedule for the reviews at question is simply unfounded.

**V.      CBD'S OBJECTIONS TO EPA'S SCHEDULES FOR THE THREE PHASES OF THESE REVIEWS ARE NOT VALID**

The Declaration of Steven Page, EPA Memo, Exh.1, includes a graph ("Page Graph") setting out detailed estimates of the time necessary to complete each phase of the individual NAAQS reviews. The graph shows how the steps, while staggered, still overlap within each review, and also how the three reviews overlap with each other, even though the "call for information" dates were staggered. As set forth below, CBD takes issue with some of the time frames for particular steps in the Page Graph, but its objections do not withstand scrutiny.

**A.      The Howekamp Declaration Does Not Provide an Adequate Foundation For CBD's Arguments.**

CBD has submitted the Declaration of D. Howekamp (July 7, 2006). CBD Opp. Ex. 1. Mr. Howekamp was the Director of the Air Division of EPA Region 9 from 1982-2000. Mr. Howekamp declares that, in this capacity, he managed many complex federal rulemakings pertaining to state and federal implementation plans. While these are important and complex proceedings, the issues of implementation are different in both substance and scale. As explained by the D.C. Circuit,

> Once EPA establishes NAAQS for a particular pollutant, the *standards become the centerpiece of a complex statutory regime* aimed at reducing the pollutant's atmospheric concentration. EPA and the States must first designate areas of the country that fail to meet the standards-that is, areas in which atmospheric concentrations of the pollutant exceed allowable levels. 42 U.S.C. § 7407(d)(1)-(2). Each State must then adopt a plan that "provides for implementation, maintenance, and enforcement of [the] primary" NAAQS, *id*. § 7410(a)(1), through, for example, regulation of wood fires or automobile or power plant emissions. States must submit their plans to EPA for approval, and may have to make revisions if the Agency finds the plans inadequate. States that fail to develop adequate plans are subject to sanctions, id. § 7509, or to imposition of a federal implementation plan, *id*. § 7410(c)(1).

*American Trucking Ass'ns, Inc. v. EPA*, 283 F.3d 355, 358-359 (D.C. Cir. 2002) (emphasis added).

Thus, the NAAQS review is the central component of CAA regulation. These reviews require the resolution of the most complex, wide-reaching, and contentious scientific issues, which is the reason that Congress formalized the participation of CASAC in the NAAQS review. There is no requirement for CASAC review in rulemakings regarding the implementation plans. Instead, the implementation plan rulemakings are limited to the more concrete questions as to how particular measures can be used to reduce emissions in a particular area to a level below the applicable NAAQS within the statutory time frame for attaining the standards.

Mr. Howekamp is certainly very familiar with the contents of the NAAQS and implementation issues. There is nothing in his declaration, however, that shows he participated in a national rulemaking as unique and complex as a NAAQS review, much less that he participated in a NAAQS review itself. Accordingly, his conclusions on the specific issues he raises regarding the time necessary to complete the stages of a NAAQS review lack significant weight.

      **B.**    **CBD'S Objections to EPA's Schedule for the Science Assessments Are Not Valid.**

           **1.**    **Preparation of Workshop Materials and Workshops**

Based on Mr. Howekamp's Declaration, CBD claims that the time allotted for preparation of the science assessments can be reduced approximately four months for each NAAQS review at issue here.[3] CBD Opp. at 4-5. Mr. Howekamp first asserts that EPA should reduce the time required for the preparation of the workshop materials and for the workshops. He suggests that these tasks can each be completed within a month.

---

[3]    The specific reductions are: $NO_2$ - 3.75 months; $SO_2$ - 3.75 months; and $NO_x$ and $SO_x$ - 4.75 months.

In contrast, for all three reviews, EPA has allowed a total of ten months for preparation of all workshop materials and seven months for workshops. For each review, the workshops begin before the preparation of the materials is completed. Almost throughout the schedule, EPA is working on preparation or workshops for at least two reviews at once.

Mr. Howekamp's statements do not show that the process could be shortened without undermining the quality of the workshop product. His opinion is based on the fact that the workshops for the lead NAAQS review were completed in about a month. Howekamp Decl. at 5. Because the lead review involved only one pollutant, one month turned out to be a viable time period in that case. Here, however, given that there are three NAAQS reviews that are closely related, there will be overlap between both the EPA employees and the consultants working on the different reviews in the workshop phase. This reality requires that the processes be staggered over a longer period.[4] It makes scheduling difficult, particularly during the holiday season. Given that the preparation and holding of the workshops involve many people other than EPA employees, the Agency cannot unilaterally establish a schedule, but must define one that will secure the necessary participation from outside parties.

### 2. Post-workshop Draft Preparation

Mr. Howekamp agrees with EPA's evaluation of the time necessary to complete the final assessment after the workshops have finished. Howekamp Decl. at 5-6. He opines, however,

---

[4]    EPA does not have separate personnel for the review process for separate rules. EPA Memo at 26-27. CBD suggests that this statement is contradicted by a statement that CASAC "is supplemented by experts hired for their particular expertise pertinent to the specific pollutants under review" to form a CASAC review panel. CBD Opp. at 12 (quoting Page Declaration at 12). CBD is mixing apples and oranges. CASAC and the experts it hires have defined functions in NAAQS reviews. There are many tasks that must be done by EPA's permanent staff. EPA's brief referred to the difficulties of having its own staff having to work on more than a number on NAAQS reviews at once.

10

that the division of time between the first and second draft be reallocated to shorten the period for the first draft and lengthen the time for the second draft.[5] His only reason for the accelerated schedule is that, because the completion of the first draft starts the risk assessment phase, an early first draft deadline will also produce an earlier start for that phase. *Id*. at 5-6. That assumption, however, is not material to the question of how much time is actually required to prepare a sufficiently adequate first draft.

The completion of the first draft also starts the CASAC Review. If the first draft is inadequate, the process for both the CASAC review and the risk assessment phase could be prolonged and unnecessarily complicated by the need to address too many shortcomings in the initial draft. In sum, the proposal is a shortcut that could easily cost more time than it purports to save, particularly since it is not based on any actual analysis of the actual task involved. EPA needs to have the discretion to decide how the drafting process should best be structured to ensure the final science assessment is timely and complete.

> B.  CBD's Objections to EPA's Schedule for the Exposure/Risk and Policy Assessments, As Well as the Rulemaking Phase, Are Not Valid.

Mr. Howekamp asserts that the period EPA has identified for the exposure/risk and policy assessments should be shortened by six weeks. Howekamp Decl. at 6. He further states that EPA could reduce the rulemaking process by four months. Mr. Howekamp fails to provide any analysis for either point. Instead, he simply relies on the Court's conclusions in *MCE* as to

---

[5] Mr. Howekamp states that the EPA should not use two drafts if the result will be to delay completion of the review. *Id.* at 5. The third exhibit submitted by CBD, Dr. George T. Wolff, "Comments on the NAAQS Review Process," at A-27 (Mar. 3, 2006), refers to the importance of the "iterative review process." If only one draft was produced, CASAC's involvement would be curtailed. Although panel members could make comments, there would be no opportunity for the panel to respond to how their comments were addressed by the Agency.

what would be an adequate amount of time. That decision speaks for itself; Mr. Howekamp's statements do not add any further weight to the conclusions of that Court.

Moreover, Mr. Howekamp lacks the personal experience with NAAQS reviews (or even national rulemakings) that would allow him to provide an informed opinion on these points. Furthermore, any conclusions as to the viablity of the lead schedule are still speculative. EPA has not begun these phases of the lead review. Accordingly, it is still unknown whether that schedule will prove viable or if EPA will have to seek additional time from the district court.

Moreover, Mr. Howekamp again fails to consider that the Agency will be working on the three rulemakings during an overlapping period, which is difficult given that many of the same personnel and managers will be involved in all three NAAQS review rulemakings. The lead case involved only one particular pollutant.

## VI. CBD HAS DROPPED ITS CLAIM FOR AN ORDER REQUIRING EPA TO COMPLETE NAAQS IMPLEMENTATION ACTIVITIES BY THE DEADLINES FOR SIGNATURE OF THE FINAL RULES

CBD's revised order omits the proposal that the Court order EPA to complete the activities necessary to implement the NAAQS simultaneously with the completion of the NAAQS reviews at issue here. The issue is not addressed in CBD's most recent memorandum. EPA previously explained why the proposal was not consistent with the CAA. EPA Memo. at 20-22. CBD now appears to have waived the issue.

## CONCLUSION

The Court should deny the motion for summary judgment filed by CBD and grant EPA's cross-motion.

                                          Respectfully submitted,

                                          SUE ELLEN WOOLDRIDGE
                                          Assistant Attorney General
                                          Environment and Natural Resources Division

|  |  |
|---|---|
|  | /s/ EILEEN T. MCDONOUGH |
|  | Environmental Defense Section |
|  | U.S. Department of Justice |
|  | P.O. Box 23986 |
|  | Washington, D.C. 20026-3986 |
| Of Counsel: | (202) 514-3126 |
|  | eileen.mcdonough@usdoj.gov |

John Hannon
Lea Anderson
Air and Radiation Law Office
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C.  20460                                                         Dated: July 31, 2006

13