UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN L. JOHNSON <br> Administrator <br> United States Environmental Protection Agency <br><br> Defendant. | Civ. No. 05-1814 (JGP) |

**PLAINTIFFS' MOTION FOR EXPEDITED REVIEW AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Pursuant to LCvR 7(f) and 28 U.S.C. § 1657(a), Plaintiffs Center for Biological Diversity, Valley Watch, Inc., Preston Forsythe, Tina Johnson, and Jeremy Nichols respectfully request the Court enter an Order scheduling an oral argument on the cross-motions for summary judgment as soon as convenient or issue a decision without oral argument as soon as convenient.[1] As explained below, Plaintiffs request this expedited schedule because of the serious public health and public welfare related consequences of delay and because the first deadlines Plaintiffs' have requested are rapidly approaching.

---

[1] Plaintiffs' counsel has a trial scheduled to run from December 4, 2006 until December 20, 2006 with an all day pre-trial conference on November 30, 2006.

**II. BACKGROUND**

Plaintiffs brought "missed deadline" claims against Defendant Stephen L. Johnson, Administrator of the United States Environmental Protection Agency ("EPA"), for EPA's failure to adhere to the requirements of 42 U.S.C. § 7409(d)(1). This provision of the Clean Air Act requires EPA to complete, at least every five years, a thorough review of the current science of adverse impacts, which is known in Clean Air Act jargon as a review of the "air quality criteria," for Nitrogen Oxides ("$NO_x$") and Sulfur Oxides ("$SO_x$") and a thorough review of the related National Ambient Air Quality Standards ("NAAQS") for these pollutants. See 42 U.S.C. § 7409(d)(1). EPA admits it has failed to meet these obligations. Answer to First Amended Complaint ¶¶ 32.1, 32.2. Thus, the only remaining issue concerns how long it will take EPA to complete the required review and make any necessary revisions.

In their cross-motions for summary judgment, Plaintiffs and Defendant each proposed schedules for completing the review required by 42 U.S.C. § 7409(d)(1). For example, Plaintiffs requested that the Court require EPA to conclude reviews of the public welfare related secondary NAAQS for $NO_x$ and $SO_x$ by October 31, 2009. Plaintiffs' Reply in Support of Their Motion for Summary Judgment (Plaintiffs' Reply) at 5. Defendant's proposal called for a deadline of November 19, 2010. EPA's Reply Memorandum in Support of Cross-Motion for Summary Judgment at 2. It is now up to the Court to decide how much time to allow EPA to complete its statutorily mandated duty.[2]

---

[2] Plaintiffs note that EPA continues meeting the interim deadlines imposed by the court in Missouri Coalition for the Environment v. United States EPA, Case No. 4:04CV00660 ERW (E.D. Mo. Sept. 14, 2005), although this schedule was much tighter than the one proposed by EPA. See id. at 9 (establishing October 1, 2006 as the deadline for completion of the final draft of the lead air quality criteria document); 71 Fed. Reg. 57,508 (Sept. 29, 2006) (announcing availability of final draft of lead air quality criteria document). Furthermore, EPA completed its review and revision of the particulate matter NAAQS on October 17, 2006, thus leaving EPA in

**III. ARGUMENT**

    **A. EXPEDITING THIS CASE IS NECESSARY TO ENSURE THAT THE COURT CAN REACH ITS DECISION BEFORE PLAINTIFFS' PROPOSED INTERIM DEADLINES PASS.**

As with any dispute in which parties disagree as to the length of time necessary for the completion of a task, a speedy resolution of the issue benefits all concerned. For example, if the Court imposes Plaintiffs' proposed schedule, doing so sooner rather than later will benefit EPA by allowing the agency more time to shift its attention in anticipation of meeting Plaintiffs' more ambitious deadlines, thus increasing the likelihood that EPA can comply with the Court's Order.

However, while the prompt promulgation of adequate NAAQS for $NO_x$ and $SO_x$ is the ultimate goal, it is important to recognize that the NAAQS themselves are only the final step in a process. Thus, Plaintiffs and EPA each proposed a series of interim deadlines to assure compliance throughout the review process. See Plaintiffs' Reply at 4-6; EPA's Memorandum in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment (EPA Brief) at 14. Because these interim deadlines are approaching, it is essential that the Court expedite its resolution of the case. The first of Plaintiffs' proposed interim deadlines, the February 28, 2007 deadline for completion of the initial draft of the science assessment of the health-related impacts of $NO_x$, is rapidly approaching, and further delay in adjudicating the parties' cross-motions for summary judgment would unjustly injure Plaintiffs by either allowing Plaintiffs' proposed deadlines to lapse or by not allowing EPA sufficient time to adjust its review process to meet such deadlines.

---

a better position to complete its SOx and NOx review once it is ordered to do so. See 71 Fed. Reg. 61143 (Oct. 17, 2006) (Final particulate matter NAAQS revision rule).

## B. SPEEDY RESOLUTION OF THIS CASE IS VITALLY IMPORTANT BECAUSE OF THE SERIOUSNESS OF THE PUBLIC HEALTH AND PUBLIC WELFARE IMPACTS OF $NO_X$ AND $SO_X$ POLLUTION.

NAAQS are public health and welfare based standards for how much air pollution is acceptable in our outside air. 42 U.S.C. § 7409(b). There is no dispute in this case that EPA has failed to fulfill its mandatory duty to review the adequacy of the existing NAAQS for $NO_x$ and $SO_x$ over the last five years. Moreover, there is also no dispute that $NO_x$ and $SO_x$ pollution has a negative impact on public health and public welfare:

> Evidence has shown that exposure to $NO_2$, at elevated concentrations, can adversely affect human health, vegetation, materials, and visibility. For example, long-term exposure to elevated concentrations of $NO_2$ may lead to increased susceptibility to respiratory infection and may cause irreversible alterations in lung structure. $NO_x$ compounds, including $NO_2$, also have adverse environmental effects. Deposition of nitrogen (acid rain) can lead to fertilization, eutrophication, or acidification of terrestrial, wetland, and aquatic (*e.g.*, fresh water bodies, estuaries, and coastal water) systems. These effects can alter competition between existing species, leading to changes in the number and type of species (composition) within a community.
> …
> EPA has found that high concentrations of $SO_2$ can result in temporary breathing impairment for asthmatic children and adults who are active outdoors. Other effects that have been associated with longer-term exposures to high concentrations of $SO_2$, in conjunction with high levels of particulate matter, include aggravation of existing cardiovascular disease, respiratory illness, and alterations in the lungs' defenses. $SO_2$ also contributes to adverse effects on the environment. Together, $SO_x$ and $NO_x$ are the major precursors to acidic deposition (acid rain), which is associated with the acidification of soils, lakes, and streams and accelerated corrosion of buildings and monuments.

EPA Brief at 5-6 (internal citations omitted). In Ohio Power, the Sixth Circuit observed that "there is now no longer any doubt that high levels of pollution sustained for periods of days can kill," and that long-term exposure to $SO_2$ produces significant health effects, including "[a]cute respiratory infections in children, chronic respiratory diseases in adults, and decreased levels of

4

ventilatory lung function in both children and adults." <u>Ohio Power Co v. US EPA</u>, 729 F.2d 1096, 1098 (6th Cir. 1984).  EPA admits that $NO_x$ also contribute to global warming.  70 Fed. Reg. 8888-89 (Feb. 23, 2005).

Plaintiffs have cited studies indicating that negative health and environmental effects are occurring at ambient $NO_x$ and $SO_x$ concentrations that are below the existing NAAQS.  First Amended Complaint for Injunctive and Declaratory Relief at pages 11-13, 17-18.  In light of the grave nature of the ills that these pollutants inflict on public health and public welfare and the uncertainty created by EPA's refusal to complete in a timely manner the statutorily required review to determine whether the existing NAAQS adequately protect public health and public welfare, expediting this case is necessary to minimize the duration of the public's exposure to $NO_x$ and $SO_x$ concentrations which may be doing irreversible damage to their health and welfare.

## IV.  DEFENDANT'S POSITION PURSUANT TO LCvR 7(m)

Pursuant to LCvR 7(m) undersigned counsel sought Defendant's position on this motion from Defendant's counsel.  Defendant's counsel requested that Plaintiffs include the following statement on Defendant's position in Plaintiffs' motion.

> EPA does not support plaintiffs' request for expedited consideration.  Plaintiffs have not articulated any imminent harm that would require expedited consideration of this case at the expense of the other matters on the Court's docket.  The pending motions should be resolved in accord with the Court's standard procedures.

**V. CONCLUSION**

Therefore, for the reasons explained above Plaintiffs respectfully request that the Court enter an Order scheduling an oral argument on the cross-motions for summary judgment as soon as convenient or issue a decision without oral argument as soon as convenient.

                                        Respectfully submitted,

                                        ____/s_____
                                        Robert Ukeiley (MD14062)
                                        Law Office of Robert Ukeiley
                                        433 Chestnut Street
                                        Berea, KY 40403
                                        Tel: (859) 986-5402
                                        Fax: (859) 986-1299
                                        E-mail: rukeiley@igc.org

                                        Counsel for Plaintiffs

Dated: November 13, 2006